## IN THE UNITED STATES DISTRICT COURT, DISTRICT OF MARYLAND
### (GREENBELT DIVISION)

| | |
|---|---|
| **MONICA GAREY,** | |
| Plaintiff, | |
| v. | Case No. 8:19-cv-03112-PWG |
| **BWW LAW GROUP, LLC, et al.** | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT

BWW, by counsel, hereby submits the following Memorandum of Law in Support of its Motion to Dismiss the Complaint filed by Plaintiff. For the reasons set forth herein, BWW respectfully requests this Honorable Court dismiss all claims made against it.

## INTRODUCTION

This lawsuit is an attempt by Ms. Garey to re-litigate the validity of a foreclosure sale already ratified by a final, enrolled Order entered by the state court on October 31, 2019. In doing so, Ms. Garey seeks to have this Court to issue rulings that undermine and negate the foundation of that final judgment. This Court should follow existing precedent and reject Ms. Garey's attempt to collaterally attack a valid, final judgment entered by the state court.

## STATEMENT OF ALLEGED FACTS

On May 29, 2015, Ms. Garey obtained mortgage loan in the amount of $194,473.12 (the "Loan"), as evidenced by a promissory note (the "Note") and deed of trust (the "Deed of Trust") securing the Loan with a mortgage lien against her former real property located at 3052 Esser Place, Waldorf, Maryland 20603 (the "Property"). Compl. at ¶ 6. The Loan was insured by the Federal Housing Administration ("FHA") and the Deed of Trust contained certain requirements

1

regarding the following of particular HUD Regulations in the event of default. Compl. at ¶ 7. Ms. Garey went into default on her payment obligations under the Loan prior to October 25, 2016. Compl. at ¶ 8.

The Loan was serviced by Defendant SunTrust Mortgage, Inc. and was owned by Defendant SunTrust Bank (collectively, "SunTrust"). *See generally*, Compl. On December 12, 2018, Substitute Trustees appointed under the Loan, who are employees of BWW, filed a foreclosure action (the "Foreclosure") against the Property in state court. Compl. at ¶ 17; *see also Carrie Ward, et al. v. Monica Garey*, Charles Cnty. Cir. Ct. Case No. C-08-CV-18-001196, a copy of Foreclosure's electronic docket is attached hereto as <u>Exhibit A</u>.[1] Within the filings that initiated the Foreclosure, BWW made representations as to the amount of outstanding debt due under the Loan. Compl. at ¶ 17.

On June 19, 2019, BWW sent Ms. Garey a letter (the "Letter") titled "NOTICE TO OCCUPANTS OF PENDING ACQUISITION," which stated the Property may be sold at foreclosure auction and ownership may be transferred to SunTrust within the next 60 to 90 days. Compl. at ¶ 24; a copy of the Letter is attached hereto as <u>Exhibit B</u>.[2] Ms. Garey alleges the representations in the Letter were false, as BWW only expected to conduct a foreclosure sale of the Property within the next 60 to 90 days, and not to transfer title to SunTrust. Compl. at ¶¶ 25-

---

[1] Because a state court foreclosure docket is a public record, is integral to the Complaint, and its authenticity has not been challenged, it can be attached hereto and considered by this Court without converting this motion to dismiss into a motion for summary judgment. *See Blankenship v. Manchin*, 471 F.3d 523, 526 n.1. (4th Cir. 2006); *see also*, *Witthohn v. Federal Ins. Co.*, 164 Fed. App. 395 (4th Cir. 2006) (holding that state-court filings are public records of which a federal court may take judicial notice when deciding a motion to dismiss).

[2] Because the Letter was referenced in, but not attached to, the Complaint, this Court can consider it for the purposes of this motion to dismiss without converting it into a motion for summary judgment. *Stone & Webster, Inc. v. Mirant Mid-Atlantic, LLC*, 2011 WL 1231529, at *3, n.3 (D. Md. Mar. 28, 2011).

28. Ms. Garey also alleges the Letter threatened her with eviction, and misrepresented the Property would be sold at foreclosure pursuant to the terms of a mortgage or deed of trust. Compl. at ¶¶ 29-30.

On July 31, 2019, BWW sent Ms. Garey a notice informing her the Property would be sold at foreclosure sale on August 20, 2019. Compl. at ¶ 32. On August 20, 2019, BWW sold the Property at foreclosure auction to SunTrust. Compl. at ¶ 38. Ms. Garey alleges that sale was improperly conducted because SunTrust did not send her a copy of a Final Loss Mitigation Affidavit ("FLMA"), did not respond to her requests for a reinstatement and pay off quote for the Loan, and did not make sufficient efforts to have a face-to-face meeting with her before the Foreclosure was filed, as required by HUD Regulations incorporated into the Deed of Trust. Compl. at ¶¶ 31-37.

On October 25, 2019, Ms. Garey filed the above-captioned action in this Court. On November 22, 2019, BWW filed a Notice of Intent to file a motion to dismiss the Complaint. On December 18, 2019, this Court conducted a telephone conference, at which Ms. Garey was given an opportunity to amend her Complaint prior to the filing of this Motion. On January 13, 2020, Ms. Garey filed an Amended Complaint, which advances class and individual claims against BWW: (1) for violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, *et seq.*; (2) for violation of the Maryland Consumer Debt Collection Practices Act ("MCDCA"); and (3) for violation of the Maryland Consumer Protection Act ("MCPA"), Md. Code, Com. Law §§ 13-101, *et seq*. Ms. Garey's remaining claims are advanced solely against SunTrust.

## STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that an action may be dismissed for failure to state a claim upon which relief may be granted. Accordingly, a Rule

12(b)(6) motion tests the legal sufficiency of a complaint. *See Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). In considering a motion to dismiss, the Court may consider "the exhibits to the complaint, matters of public record, and other similar materials that are subject to judicial notice." *Judicial Watch, Inc. v. Rossotti*, 217 F.Supp.2d 618, 622 (D. Md. 2002). While the Court must take all factual allegations made in a complaint as true, *see Eastern Shore Markets, Inc. v. JD Assocs. Ltd. P'ship*, 214 F.3d 175, 180 (4th Cir. 2000), the Supreme Court of the United States heightened a plaintiff's pleading requirements in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Now, in order to survive a motion to dismiss, the "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Twombly*, 550 U.S. at 555. Indeed, the Fourth Circuit has concluded that the Supreme Court's decision in *Twombly* establishes a regime that is "more favorable to dismissal of a complaint" at the earliest stages of a case. *See Giarratano v. Johnson*, 521 F.3d 298, 306 n.3 (4th Cir. 2008).

Specifically, a plaintiff's claim must be dismissed if he fails to allege "enough facts to state a claim to relief that is plausible on its face such that he has nudged [his] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

In *Iqbal*, the Court enunciated a two-step approach for determining whether a complaint may survive dismissal. First, a district court need not accept legal conclusions as true, as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice…." *Iqbal*, 129 S. Ct. at 1949-50. Second, only a complaint that states

a plausible claim for relief should survive a motion to dismiss, and making such a determination is a "context specific" task where the court must apply its judicial experience and common sense. *Id.* Therefore, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are not more than conclusions, are not entitled to the assumption of truth." *Id.*

## <u>DISCUSSION</u>

Ms. Garey's attack on the enrolled order ratifying the sale entered in the state court Foreclosure is barred by the doctrine of *res judicata*.  In the alternative, Ms. Garey fails to state a viable claim against BWW upon which relief can be granted under any of the statutory causes of action she advances.  For these reasons, the Complaint should be dismissed with prejudice.

a) <u>Ms. Garey's attack on the validity of the Foreclosure is barred by the doctrine of *res judicata*.</u>

Ms. Garey's present claims are barred by the doctrine of *res judicata* as they could have been litigated to a final judgment within the Foreclosure.  Because this doctrine applies to all of Ms. Garey's claims against BWW, her Complaint should be dismissed with prejudice.

"It is well established that the doctrine of *res judicata* bars the relitigation of matters previously litigated between parties and their privies, as well as those claims that *could have been asserted* and litigated in the original suit." *Anyanwutaku v. Fleet Mortg. Group, Inc.*, 85 F.Supp.2d 566, 571 (D. Md. 2000).  In analyzing the applicability of *res judicata*, a court must consider the following elements, (1) whether the present parties are the same or in privity with the parties to the earlier dispute, (2) whether the claim is identical to the one determined in the prior adjudication, and (3) whether there has been a final judgment on the merits in the initial action.  *Capel v. Countrywide Home Loans, Inc.*, 2010 WL 457534, at *3 (D. Md. Feb. 3, 2010) (citations omitted).

Here, because the elements of *res judicata* are present, all of Ms. Garey's claims against BWW should be dismissed as precluded.

With regards to the first element, the parties to this suit were the same parties or in privity with the parties in the Foreclosure. "Privity in the *res judicata* sense generally involves a person so identified in interest with another that he represents the same legal right." *FWB Bank v. Richman*, 731 A.2d 916, 930 (Md. 1999). Ms. Garey herself, was a party to the Foreclosure. Exhibit A. The plaintiffs in the Foreclosure were the substitute trustees, including attorneys from BWW, who were acting to enforce the rights of the Loan's secured lender, SunTrust, under the Note and Deed of Trust associated with the Property. *See* Compl. at ¶ 17 (alleging BWW filed the Foreclosure). Because BWW and the plaintiffs to the Foreclosure share a mutuality of interest with respect to the validity of the judgments entered in that action, they are in privity with each other and the first element of *res judicata* is met. *Proctor v. Wells Fargo Bank, N.A.*, 289 F.Supp.3d 676, 683 (D. Md. 2018).

With regards to the second element, Maryland law applies the transaction test to determine whether claims are identical. *See Kent Cty. Bd. Of Educ. v. Bilbrough*, 525 A.2d 232, 238 (Md. 1987). "Under the transaction test, a 'claim' includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the claim arose." *Boyd v. Bowen*, 806 A.2d 314, 325 (Md. App. 2002). Thus, *res judicata* bars not only claims from the original litigation, but also other claims that could have been brought in the original litigation. *Id*. As a result, "[t]his Court has consistently held that *res judicata* bars collateral attack on foreclosure judgments." *Proctor*, 289 F.Supp.3d at 683. This bar extends to statutory claims, such as the FDCPA, MCDCA, and MCPA claims advanced here by Ms. Garey, because those claims could have been brought within the Foreclosure, and to hold

otherwise would allow parties to frustrate the goal of *res judicata* through artful pleading and claim

splitting. *See McGhee v. JP Morgan Chase Bank, N.A.*, 2013 WL 4495797, at *5 (D. Md. Aug.

20, 2013); *see also*, *Proctor*, 289 F.Supp.3d at 683-84 (finding statutory consumer claims brought

after completed foreclosure sale satisfy the *res judicata* transaction test, and citing numerous cases

in support of this conclusion); *Prudential v. Capital One, N.A.*, 2016 WL 6947016, at * 3 (D. Md.

Nov. 28, 2016) (same); *Murray v. Bierman, Geesing, Ward & Wood, LLC*, 2012 WL 4480679, at

*3 (D. Md. Sept. 27, 2012) (same); *Penden v. BWW Law Group*, 2018 WL 690880, at *2-4 (D.

Md. Feb. 1, 2018) (same); *Betsoff v. Diane S. Rosenberg & Assocs., LLC*, 2019 WL 3869284, at

*3-6 (D. Md. Aug. 16, 2019) (same).

Indeed, there can be no doubt that Ms. Garey could have brought her present claims within

the Foreclosure.  The arguments central to Ms. Garey's Complaint are that SunTrust did not

comply with the conditions precedent to having declared the Loan in default, and therefore, did

not have the right to go through with the Foreclosure.  Such an argument challenges SunTrust's

right to foreclose, and therefore fits squarely within those authorized to be made by a borrower in

defense of a foreclosure proceeding.  Md. Rule 14-211(a)(3)(B); *see also Wells Fargo Home

Mortg., Inc. v. Neal*, 922 A.2d 538, 547-553 (Md. 2007) (holding that a borrower may assert raise

failure to comply with the same HUD Regulation relied upon here by Ms. Garey as a defense

within a foreclosure proceeding); *Hobby v. Burson*, 110 A.3d 796 (Md. App. 2015) (reviewing

circuit court's denial of a motion to stay and dismiss file within a foreclosure proceeding, which

alleged non-compliance with the same HUD Regulation relied upon here by Ms. Garey, for abuse

of discretion).  Likewise, Ms. Garey could also have brought her present claims as counterclaims

filed within the Foreclosure action itself, especially as they seek to impair rights established within

the Foreclosure and nullify judgments entered within that action.  *Bullock v. Ocwen Loan*

*Servicing*, 2015 WL 5008773, at \*6 (D. Md. Aug. 20, 2015); *see also*, *Fairfax Sav. F.S.B. v. Kris Jen Ltd. Partnership*, 655 A.2d 1265, 1280 (Md. 1995) (holding that collateral claims for damages that seek the "negate, contradict, and in that sense nullify an essential foundation" of a completed foreclosure action are barred by the doctrine of *res judicata*).  In fact, under Maryland's foreclosure scheme, because her present claims were ripe and available to be brought by Ms. Garey prior to the Property being sold at foreclosure auction, Ms. Garey's failure to bring these claims at that time operates as a waiver of these claims as a matter of law.  *Bates v. Cohn*, 9 A.3d 846, 858 (Md. 2010).  Thus, the second element of *res judicata* is met.

With regards to the third element, the state court entered an Order ratifying the Foreclosure on October 31, 2019.  Exhibit A.  The ratification of that sale "constitutes a final judgment for preclusion purposes." *Proctor*, 289 F.Supp.3d at 684.  This is true even where, like here, a borrower chooses to remain silent rather than raising her claims within the pending foreclosure action. *Moss v. Annapolis Sav. Inst.*, 8 A.2d 881, 884 (Md. 1939) (when one is given an opportunity to object to a foreclosure, but elects to remain silent, she is bound by the resulting judgment as if he had actively contested it).  This Court should "give to [the] state court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. Of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984).  Thus, the third element of *res judicata* is met.

As all of the elements of *res judicata* have been met, the finality of the Foreclosure prevents Ms. Garey from raising claims related to the validity of that proceeding.  Instead, such claims should have been raised within the Foreclosure itself.  Thus, Ms. Garey's claims against BWW are precluded and must be dismissed with prejudice.

b) Ms. Garey's FDCPA claims, if not precluded, fail to state a viable cause of action.

In the alternative that Ms. Garey's Complaint is not dismissed as precluded, her FDCPA claims should be dismissed for failure to state a claim upon which relief can be granted. To plead a viable FDCPA claim, a plaintiff must allege that: (1) she has been the object of collection activity arising from consumer debt; (2) the defendant is a debt collector as defined by the FDCPA; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA. *See Stewart v. Bierman*, 859 F.Supp.2d 754, 759 (D. Md. 2012).

i) *Ms. Garey's class FDCPA allegations fail to state a claim upon which relief could be granted.*

Ms. Garey's FDCPA class claim is premised upon the sending of the Letter. Compl. at ¶ 47. Specifically, Ms. Garey alleges BWW's sending of the Letter violated §§ 1692e and 1692f by claiming, or threatening to obtain title to the Property and evict her during a time period BWW had no right to obtain title to the Property. Compl. at ¶ 48. However, that claim is not viable because (1) the Letter is not a communication governed by the FDCPA as a matter of law; and (2) because the Letter does not contain any false statements regarding when the Property's title was expected to be transferred and does not threaten Ms. Garey with any eviction.

(1) The Letter is not a communication governed by the FDCPA as a matter of law.

"It is well established that 'the threshold requirement for application of the [FDCPA] is that prohibited practices are used in an attempt to collect a debt.'" *Bradshaw v. Hilco Receivables, LLC*, 765 F.Supp.2d 719, 725 (D. Md. 2011) (quoting *Mabe v. G.C. Serv. P'ship*, 32 F.3d 86, 87-88 (4th Cir. 1994)). However, "[n]ot every communication sent by a debt collector to a debtor is subject to the FDCPA." *Olson v. Midland Funding, LLC*, 2013 WL 6717480, at *4 (D. Md. Dec. 18, 2013). Instead, to determine whether a communication is governed by the FDCPA, this Court should "consider 'the absence of a demand for payment,' '[t]he nature of the parties relationship,'

and the objective 'purpose and context of the communication[ ].'"  *Olson v. Midland Funding, LLC*, 578 Fed. App. 248, 251 (4th Cir. 2014) (citations omitted).

In this context, district courts that have examined documents such as the Letter have concluded they are not communications subject to the FDCPA.  *Estep v. Manley Deas Kochalski, LLC*, 942 F.Supp.2d 758 (S.D. Ohio 2013), *aff'd*, 552 Fed.Appx. 502 (2014); *Clark v. Shapiro and Pickett, LLC*, 452 Fed. Appx. 890 (11th Cir. 2012); *Todaro v. Reimer*, 2016 WL 6777805 (N.D. Ohio Nov. 16, 2016).  The District Court in *Estep* found the subject letter was required by HUD's regulatory scheme governing conveyance of occupied property, contained no language suggesting its purpose was to collect on the debt owed by the borrower; and instead, only referred to the foreclosure action and possible eventual transfer of the property to HUD in an effort to assist the occupant in completing the HUD form for requesting an occupied conveyance.  *Estep*, 942 F.Supp.2d at 763 (citing 24 C.F.R. § 203.675).  The Sixth Circuit Court of Appeals affirmed that ruling, holding that absent content outside of that required by HUD Regulations, intended to induce payment of the debt by the recipient, it "was not sent in connection with the collection of a debt, and the FDCPA does not govern the letter's content."  *Estep*, 552 Fed. Appx. at 506-08.

Here, Ms. Garey does not allege the Letter contains any content outside of that required by HUD Regulations, nor does she direct this Court to any language contained therein that was intended to induce payment of the subject debt.  Thus, as Ms. Garey has failed to plead facts establishing that the Letter was a communication sent in connection with the collection of a debt, her FDCPA class claim must be dismissed.

(2) The Letter does not contain any false statements regarding when the Property's title was expected to be transferred and does not threaten Ms. Garey with any eviction.

In the alternative the Letter is a communication under the FDCPA, Ms. Garey must still plead facts making it plausible the Letter contains false statements for her claim to be viable.  *See*

*Stewart*, 859 F.Supp.2d at 759.  Here, Ms. Garey alleges the Letter's statement that "ownership of the property may be transferred to SunTrust Bank within the next 60 to 90 days as a result of the foreclosure sale" was false because, while the foreclosure auction would occur within that timeline, it would not be ratified by the state court until later.  Compl. at ¶¶ 25-28, 47, 51.  Ms. Garey claims the result of that statement was that she was threatened with being evicted from the Property months before she could actually be evicted.  Compl. at ¶ 29.[3]  However, an examination of the Letter itself and applicable law shows that no false statements or threats were contained therein, and Ms. Garey's allegations otherwise can therefore be disregarded.  *See* Exhibit B; *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (a Court is not required to accept as true allegations that contradict matters properly subject to judicial notice or by exhibit).

Indeed, the borrower in *Estep* made similar allegations – that the HUD letter falsely represented the timeline in which ownership of the property would be transferred, thereby threatening the borrower with an eviction during a time when the lender had not yet acquired a right to the Property's possession.  *Estep*, 942 F.Supp.2d at 762.  However, the District Court dismissed those claims, holding that "there is no language in the letter which could reasonably be construed as encouraging the occupant to leave the property, or as evidencing any intent on the part of the defendant to so influence the occupant.  Rather, the text of the letter indicates that its

---

[3] Ms. Garey also alleges that the Letter misrepresented that the Property being "sold at a foreclosure sale auction pursuant to the terms of a mortgage or deed of trust."  Compl. at ¶ 31.  However, this allegation does not appear to be the basis of her FDCPA class claim against BWW.  *See* Compl. at ¶ 47.  Nonetheless, Ms. Garey has not pled sufficient facts to establish this statement was false, especially in the context where she admits she signed the Deed of Trust, was in default on the Loan, that the Foreclosure had been filed related to that default, and does not dispute the validity of that instrument's power of sale.  Compl. at ¶¶ 6, 8, 17.  The fact that Ms. Garey may allege that certain HUD Regulations may not have been complied with was, as explained more fully *infra*, a defense she could have raised within the Foreclosure under Maryland Rule 14-211, and does not make any statement that the Property was being sold at foreclosure auction pursuant to the terms of a Deed of Trust untrue.

sole purpose is to inform the occupant of what he or she needed to do to apply to HUD to remain in the property." *Id.* at 765-66. Moreover, the subject letter's language did not state when title would be transferred in definite terms, instead referring to when title was expected to be transferred. *Estep*, 942 F.Supp.2d at 769. Such "statements amount to no more than opinions or expectations of future events" and are not definite statements, and therefore, without facts alleged sufficient to show that the defendant could not reasonably have expected a decree to be entered within that timeframe, the facts could not support an FDCPA claim even if the HUD letter was a communication subject to that Statute. *Id.*

Affirming, the Sixth Circuit Court of Appeals also held that, even if the HUD notice were sent prematurely, it would amount to a violation only of the applicable HUD Regulation (24 C.F.R. § 203.675(a)), rather than the FDCPA. *Estep*, 552 Fed. Appx. at 506. "At most, a premature occupied-conveyance notice is likely to cause the recipient to submit her occupied-conveyance application to HUD prematurely." *Id.* at 507. Such a result, however, is not intended to induce payment of the outstanding mortgage debt and therefore "does not subject a mortgagee or its agents to liability under the FDCPA." *Id.* Moreover, the Sixth Circuit Court of Appeals held that "[t]he HUD regulations commit that decision [on when title is expected to be transferred] to the discretion of the foreclosing mortgagee and its agents, *see* 24 C.F.R. § 203.675(a), and any challenge to the reasonableness of the mortgagee's assessment should not be brought under the FDCPA." *Id.*

Here, Ms. Garey does not allege the Letter contains any content outside of that required by HUD Regulations or any separate references to, or threats of an eviction. Further, Ms. Garey recognizes that a foreclosure sale was expected to be held within 60-90 days of the date of the Letter. Compl. at ¶ 28. Under Maryland law, inchoate equitable title is transferred to a foreclosure purchaser on the date of the auction, *Empire Properties, LLC v. Hardy*, 873 A.2d 1187, 1201 (Md.

2005), and upon the sale's later ratification by the state court, the purchaser's complete equitable title is established retroactively to the date of the original foreclosure auction. *Merryman v. Bremmer*, 241 A.2d 558, 564 (Md. 1968). Thus, BWW submits that, not only did it act within its discretion to decide the Property's title was expected to be transferred on the date of the foreclosure auction, but that such statement was also correct as a matter of Maryland law. Thus, as Ms. Garey has failed to plead facts establishing that any statements contained in the Letter were false, her FDCPA class claim must be dismissed.

ii) *Ms. Garey's individual FDCPA allegations fail to state a claim upon which relief could be granted.*

Unlike Ms. Garey's class FDCPA allegations, which focus upon the Letter, Ms. Garey's individual FDCPA allegations focus upon alleged misrepresentations made by BWW concerning the Foreclosure itself. Specifically, Ms. Garey alleges that BWW violated §§ 1692e and 1692f of the FDCPA by misrepresenting the amount, character, and legal status of the debt, that foreclosure proceedings had begun and/or that it could conduct a foreclosure sale before any foreclosure action had been filed, and by threatening and conducting a foreclosure sale when it had no right to conduct a foreclosure sale. Compl. at ¶¶ 62-64. However, these claims are not viable because (1) Ms. Garey does not plead sufficient facts to support her conclusory allegations; (2) the HUD Regulation that forms the basis Ms. Garey's claims does not support a private right of action against BWW; (3) Ms. Garey's claims related to the lack of a face-to-face meeting are time-barred; and (4) Ms. Garey does not allege separate and distinct conduct to support her claim under § 1692f.

(1) Ms. Garey does not plead sufficient facts to support her conclusory allegations.

In *Iqbal* the United States Supreme Court held that Rule 8(a) of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed accusation." *Iqbal*, 129 S. Ct. at 1949. Accordingly, "a court considering a motion to dismiss can choose to

begin by identifying pleadings that, because they are not more than conclusions, are not entitled to the assumption of truth." *Id*.

In this case, Ms. Garey advances her individual FDCPA claims against BWW without pleading facts to support these claims. For example, Ms. Garey only pleads one instance where BWW made a representation related to the amount, character, and legal status of the debt. Compl. at ¶ 17. Yet, Ms. Garey does not plead any facts in her Complaint showing why this representation was false. Ms. Garey also alleges that BWW falsely represented that foreclosure proceedings had begun and/or that it could conduct a foreclosure sale before any foreclosure action had been filed. Compl. at ¶ 63. Yet, Ms. Garey's Complaint is entirely devoid of any allegations of representations made to her by BWW before the Foreclosure was filed on December 12, 2018. Instead, all of Ms. Garey's interactions regarding the Loan before that date are alleged to have occurred directly between her and SunTrust. Compl. at ¶¶ 9-16. These deficiencies were outlined in BWW's Notice of Intent to File a Motion (ECF 8), and Ms. Garey was given an opportunity to cure them. However, despite these claims being grounded in fraud and therefore required to be pled with particularity, Fed. R. Civ. P. 9(b), Ms. Garey did not include additional facts to support them within her Amended Complaint.

Such conclusory allegations cannot state a claim upon which relief may be granted because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice…." *Id*. at 1949-50. Accordingly, these conclusions, without more, should be disregarded and Ms. Garey's individual FDCPA claims should be dismissed.

(2) The HUD Regulation that forms the basis of Ms. Garey's remaining claims does not support a private right of action against BWW.

In Ms. Garey's remaining individual FDCPA claims, she alleges BWW threatened and conducted a foreclosure sale of the Property when it had no right to have done so. Compl. at ¶ 64.

14

These claims are based upon SunTrust's alleged failure to have conducted a face-to-face meeting prior to the Foreclosure being filed, as contemplated by the HUD Regulations incorporated into the Deed of Trust.  *See* Compl. at ¶¶ 31, 33-37.  However, these claims fail for the following reasons.

First, the subject Regulation imposes no duty upon a law firm such as BWW.  Instead, the subject Regulation places requirements only upon the mortgagee (SunTrust).  *See* 24 C.F.R. § 203.604(b) (referencing the "mortgagee"); *see also*, 24 C.F.R. § 203.251(f) (defining "mortgagee" to mean "the original lender under a mortgage and its successors and such of its assigns as are approved by the Commission.").

Second, as the HUD Regulation implementing the face-to-face meeting requirement was enacted pursuant to the National Housing Act ("NHA"), it does not support a direct or implied right of action on behalf of a borrower for its violation.  *Neal*, 922 A.2d at 546 (violation of the subject HUD Regulation "may not be invoked by the mortgagor as a sword in an offensive cause of action against the mortgagee."); *see also*, *In re Shelton*, 481 B.R. 22, 28 (Bankr. W.D. Mo. 2012) ("Thus, neither the National Housing Act or its regulations create a private right of action for a mortgagor."); *In re Miller*, 124 Fed. Appx. 152, 155 (4th Cir. 2005) ("Congress did not intend to create a private right of action for mortgagors" for a mortgagee's alleged non-compliance with HUD mortgage servicing regulations).  Instead, any alleged failure to comply with the Regulation's face-to-face meeting requirement would constitute a defense to foreclosure only, *Neal*, 922 A.2d at 547-553, that was available to be timely raised by Ms. Garey within a motion to stay the Foreclosure filed under Maryland Rule 14-211, *Hobby*, 110 A.3d 796.  Ms. Garey's failure to timely raise this claim in this fashion, waived the claim as a matter of law.  *Bates v. Cohn*, 9 A.3d at 858.

15

"The FDCPA and HUD occupied-conveyance regulations are two discrete regulatory schemes that serve distinct purposes and operate independently of one another." *Estep*, 552 Fed. Appx. at 506. Thus, BWW submits this Court should not allow Ms. Garey to circumvent Congress's intent (to not create a private right of action) by recasting an alleged HUD servicing violation as an alternative cause of action. *See e.g.*, *Ramos v. Bank of America, N.A.*, 2012 WL 5928732, at *4 (D. Md. Nov. 26, 2012) (disallowing recasting of alleged violation of FHA loan modification program as a different cause of action to circumvent legislature's intent that no private right of action existed).

Third, Ms. Garey admits elsewhere in her Complaint that she failed to pay the Loan, which was a condition of default under the loan documents. *See* Compl. at ¶ 8. Thus, a right to exercise the Deed of Trust's power of sale by selling the Property at foreclosure auction existed during all relevant times. For these reasons, Ms. Garey's individual FDCPA claims should be dismissed.

(3) Ms. Garey's claims related to the lack of a face-to-face meeting are time-barred.

Under the FDCPA, "[a]n action to enforce liability created by this subchapter may be brought… within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). The discovery rule does not apply to FDCPA claims. *Rotkiske v. Klemm*, 140 S.Ct. 355 (Dec. 10, 2019). The continuing violation theory also does not apply to FDCPA clams, as any claim accrues on "the date of the first violation, and subsequent violations of the same type do not restart the limitations period." *Bey v. Shapiro Brown & Alt, LLC*, 997 F.Supp.2d 310, 316 (D. Md. 2014) (citation omitted).

Under the applicable HUD Regulation, any face-to-face meeting would have been required to occur "before three monthly installments due on the mortgage are unpaid." 24 C.F.R. § 203.604(b). Here, Ms. Garey's mortgage default began, at the latest, on October 25, 2016. *See*

Compl. at ¶¶ 8-9.  That means that if the subject Regulation was violated, any associated FDCPA claim accrued, at the latest, on January 25, 2017, when three months passed post default and no efforts to conduct a face-to-face meeting had been made by SunTrust.  This date was more than one year prior to the filing of the present action on October 25, 2019.  Thus, Ms. Garey's associated FDCPA claims should be dismissed as time-barred.

> (4) <u>Ms. Garey's § 1692f claim is not based on separate and distinct conduct from her § 1692e claim</u>

While Ms. Garey advances claims for violations of both 15 U.S.C. §§ 1692e and 1692f, she bases those claims on the same exact facts and conduct.  Compl. at ¶¶ 47, 62-64.  However, § 1692f provides a cause of action only for conduct that is not specifically addressed in any other provision of the FDCPA.  *Stewart v. Bierman*, 859 F.Supp.2d 754, 765 (D. Md. 2012), *aff'd sub. nom.*, *Lembach v. Bierman*, 528 F. App's 297 (4th Cir. 2013).  Thus, a § 1692f claim should be dismissed when it is not supported by conduct that is separate and distinct from other FDCPA claims.  *Id*; *Cooke v. Carrington Mortgage Services*, 2019 WL 3241128 (D. Md. July 18, 2019) (dismissing § 1692f claim based upon same conduct underlying plaintiff's § 1692e claim).  Ms. Garey here fails to support her § 1692f claim with separate and distinct conduct from that underlying her § 1692e claim.  For these reasons, Ms. Garey's § 1692f claim must be dismissed.

c.  <u>Ms. Garey's MCDCA claims, if not precluded, fail to state a viable cause of action.</u>

In the alternative that Ms. Garey's Complaint is not dismissed as precluded, her MCDCA claims should be dismissed for failure to state a claim upon which relief can be granted.  Ms. Garey advances her MCDCA claims under §§ 14-202(8) and (11).  For a plaintiff to maintain a viable claim under § 14-202(8), a collector must "[c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist."  Thus, unlike the FDCPA, which has no knowledge requirement, "the key to prevailing on a claim of MCDCA [§ 14-202(8)] is to demonstrate that the

defendant acted with knowledge as to the invalidity of the debt." *Pugh v. Corelogic Credo, LLC*, 2013 WL 5655705, at *4 (D. Md. Oct. 16, 2013) (citing *Stewart v. Bierman*, 859 F.Supp.2d 754, 769 (D. Md. 2012)). The MCDCA does not allow for recovery in errors or disputes in the process or procedure of collecting legitimate, undisputed debts. *Dainty v. Wells Fargo Bank, N.A.*, 2017 WL 750478, at *5 (D. Md. Feb. 24, 2017). To state a viable claim under § 14-202(11), a plaintiff must show that a debt collector engaged in conduct that violates the FDCPA.

        i)   *Ms. Garey's class MCDCA allegations fail to state a claim upon which relief could be granted.*

In Ms. Garey's MCDCA class claim, she alleges BWW's sending of the Letter violated §§ 14-202(8) and (11) by claiming, or threatening to obtain title to the Property and evict her during a time period BWW had no right to obtain title to the Property. Compl. at ¶ 51. This claim mirrors Ms. Garey's FDCPA class claim. Compl. at ¶ 47. As such, Ms. Garey's MCDCA class claim fails for the same reasons her FDCPA class claim fails.

Specifically, an examination of the Letter and the context in which it is sent shows it is not a communication sent in connection with the collection of a debt. Further, nothing in the Letter itself threatens Ms. Garey with an eviction, and the Letter did not contain any misrepresentations as to when the Property's title was expected to be transferred, as explained *supra*. "Rather, the text of the letter indicates that its sole purpose is to inform the occupant of what he or she needed to do to apply to HUD to remain in the property." *Estep*, 942 F.Supp.2d at 765-66. Last, even if a portion of the applicable HUD Regulation was violated, that would not extend a private right of action to Ms. Garey for the reasons explained *supra*, and this Court should not permit Ms. Garey to recast her allegations under the MCDCA to create such a right. This is especially true in the context of a statute such as the MCDCA, where the legislature has enumerated other statutes that, if violated, would also constitute a violation of the MCDCA, but has omitted the HUD servicing

regulations from that list. *See* Md. Code, Comm. Law § 14-202(8)(10)-(11); *Immanuel v. Comptroller of Maryland*, 141 A.3d 181, 193 n. 6 (Md. 2016) ("Maryland has long accepted the doctrine of *expression* (or *inclusion*) *unius exclusion alterius*, or the expression of one thing is the exclusion of another.").

Ms. Garey has also not plead sufficient facts to establish it was plausible that BWW had knowledge that any facts contained within the Letter were false, as required to state a viable claim under § 14-202(8) of the MCDCA. Last, as Ms. Garey has not pled a viable FDCPA claim for the reasons explained above, her claim under § 14-202(11) of the MCDCA fails as a result. Thus, Ms. Garey's MCDCA class claim must be dismissed.

      ii) <u>*Ms. Garey's individual MCDCA allegations fail to state a claim upon which relief could be granted.*</u>

In Ms. Garey's individual MCDCA claims, she alleges that BWW violated § 14-202(8) by claiming a right and/or attempting to collect debt amounts in excess of the true amount owed, and by claiming a right to conduct a foreclosure sale when no foreclosure action had yet been filed. Compl. at ¶¶ 68-69. Ms. Garey also alleges BWW violated § 14-202(11) by violating the FDCPA. Compl. at ¶ 70. These allegations are similar to, or mirror portions of Ms. Garey's individual FDCPA claims. Compl. at ¶¶ 62, 63. As such, Ms. Garey's individual MCDCA claims fail for the same reasons her individual FDCPA claims fails.

Specifically, Ms. Garey only pleads one instance where BWW made a representation related to the amount, character, and legal status of the debt. Compl. at ¶ 17. Yet, Ms. Garey does not plead any facts in her Complaint showing why this representation was false. Ms. Garey's Complaint is also entirely devoid of any allegations of representations made to her by BWW before the Foreclosure was filed on December 12, 2018. Instead, all of Ms. Garey's interactions regarding

the Loan before that date are alleged to have occurred directly between her and SunTrust. Compl. at ¶¶ 9-16.

Ms. Garey has also not plead sufficient facts to establish it was plausible that BWW had knowledge that any of its statements related to the amount, character, and legal status of the debt were false, as required to state a viable claim under § 14-202(8) of the MCDCA. Further, Ms. Garey does not dispute the validity of the Loan's underlying debt, and the MCDCA does not allow for recovery in errors or disputes related to the process of procedure of collecting a legitimate, undisputed debt such as the Loan. *Dainty*, 2017 WL 780478, at *5. Ms. Garey has also not pled a viable FDCPA claim for the reasons explained above, and her claim under § 14-202(11) of the MCDCA fails as a result. Thus, Ms. Garey's individual MCDCA claims must be dismissed.

d. <u>Ms. Garey's MCPA claims, if not precluded, fail to state a viable cause of action.</u>

In the alternative that Ms. Garey's Complaint is not dismissed as precluded, her MCPA claims should be dismissed for failure to state a claim upon which relief can be granted. The MCPA prohibits "unfair or deceptive trade practices" in connection with a consumer debt. Md. Code, Com. Law § 13-303. To state a claim under the MCPA, "a plaintiff must adequately plead that (1) the defendant engaged in an unfair or deceptive practice or misrepresentation, (2) that plaintiff relied upon the representation, and (3) doing so caused the plaintiff actual injury." *Turner v. JPMorgan Chase, N.A.*, 2014 WL 4843689, at *5 (D. Md. Sept. 25, 2014).

i) *<u>As a law firm sued in connection with its professional services, BWW is exempt from the MCPA.</u>*

Ms. Garey's MCPA claims against BWW globally fail because, as attorneys sued in connection with their professional services, they are exempt from that Act. Md. Code, Com. Law, § 13-104(1) ("This title does not apply to: (1) The professional services of a… lawyer…."). Indeed, Ms. Garey recognizes that BWW is a law firm, and sues BWW in that capacity. Compl.

at ¶ 5.  Ms. Garey does not allege that any actions taken by BWW, that form the basis of her MCPA claims, were done outside of BWW's role of providing professional services to its clients.  Thus, as Ms. Garey has sued BWW in connection with its professional services and activities as attorneys, the exemption applies, and Ms. Garey's MCPA claim should be dismissed.  *Stewart v. Bierman*, 859 F.Supp.2d 754, 768 (D. Md. 2012).

      ii)   <u>In the alternative BWW is not exempt from the MCPA, Ms. Garey's class allegations fail to state a claim upon which relief could be granted.</u>

In Ms. Garey's MCPA class claim, she alleges BWW's violated § 13-301(14)(iii)[4] by violating § 14-202(8) of the MCDCA in connection with its sending of the Letter.  Compl. at ¶ 54.  This claim fails, however, because Ms. Garey has not pled a viable claim under § 14-202(8) of the MCDCA, and also because Ms. Garey has failed to plead facts to support the additional reliance and damages elements of an MCPA cause of action.

To state a viable claim under § 13-301(14)(iii) MCPA, a merchant must engage in conduct that violates the MCDCA.  Ms. Garey alleges BWW's violation of § 14-202(8) of the MCDCA is the entire basis of her class MCPA claim.  Compl. at ¶ 54.  However, Ms. Garey has not stated a viable claim under § 14-202(8) of the MCDCA claim, for the reasons explained *supra*.  Moreover, as explained more fully above, even if a portion of the applicable HUD Regulation was violated in connection with BWW's sending the Letter, that would not extend a private right of action to Ms. Garey, and this Court should not permit Ms. Garey to recast her allegations under the MCPA to create such a right.  This is especially true in the context of a statute such as the MCPA, where the legislature has enumerated other statutes that, if violated, would also constitute a violation of

---

[4] Ms. Garey's Complaint incorrectly advances this claim under § 13-301(13)(iii) of the MCPA, which is a subsection that does not exist.

the MCPA, but has omitted the HUD servicing regulations from that list.  *See* Md. Code, Comm. Law § 13-301(14).

Further, even if Ms. Garey had pled a viable claim under § 14-202(8) of the MCDCA, that alone would not be sufficient to make her MCPA viable.  This is so because the MCPA also requires a plaintiff to plead facts showing the additional elements of reliance and actual injury. This is especially important where, like here, the MCPA claim is grounded in fraud and therefore required to be pled with particularity.  *See Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013).

To satisfy the reliance element of an MCPA claim, "a plaintiff must show that the defendant's misrepresentation substantially induced a choice by the plaintiff."  *Turner*, 2014 WL 4843689, at *6, "either by taking actions that []he otherwise would not have taken, or by refraining from taking actions that she otherwise would have taken."  *See Turner v. JP Morgan Chase, N.A.*, 2015 WL 5021390, at *5 (D. Md. Aug. 21, 2015).  Here, Ms. Garey does not plead facts showing that any representation by BWW substantially induced her to make a choice that she would have not taken, or refrained from taking actions that she otherwise would have taken.  Instead, Ms. Garey only alleges, in conclusory fashion, that BWW's conduct was the "proximate cause" of her injuries.  Compl. at ¶ 56.  However, such a legal conclusion by Ms. Garey is not entitled to the presumption of truth.  *See Iqbal*, 129 S. Ct. at 1949-50.

To satisfy the damages element of an MCPA claim, a plaintiff needs "to allege an objectively identifiable 'actual injury or loss.'"  *Robinson v. Nationstar Mortgage., LLC*, 2015 WL 4994491, at *4 (D. Md. Aug. 19, 2015) (citation omitted).  "[T]he consumer must have suffered an identifiable loss, measured by the amount the consumer spent or lost as a result of his or her reliance on the sellers' misrepresentation."  *Id*.  Unlike the MCDCA, the MCPA does not permit

recovery for purely emotional damages without a consequential physical injury that is capable of objective determination. *Butler v. Wells Fargo Bank, N.A.*, 2013 WL 3816973, at \*3 (D. Md. July. 22, 2013).  Here, Ms. Garey does not plead facts with particularity showing she suffered an identifiable loss, measured by the amount she spent or lost as a result of her reliance on BWW. Instead, Ms. Garey only alleges, in conclusory fashion, that she endured "actual damages" generally.  Compl. at ¶ 55.

Thus, Ms. Garey's MCPA class claim fails to state a viable cause of action, as she has not pled a viable claim under § 14-202(8) of the MCDCA to support it, and she has also not pled sufficient facts to establish the reliance and actual damages elements of her claim.  Her MCPA class claim should therefore be dismissed.

iii) *In the alternative BWW is not exempt from the MCPA, Ms. Garey's individual allegations fail to state a claim upon which relief could be granted.*

In Ms. Garey's individual claims, she alleges no facts directly against BWW; instead, she only alleges that BWW violated unspecified sections of the MCPA due to SunTrust's actions. Compl. at ¶¶ 74-84.  These claims fail because, as its attorney, BWW is SunTrust's agent, and an agent is not liable for the acts of its principal or the acts of other agents of its principal as a matter of law. *Hare v. Family Publications Service, Inc.*, 342 F.Supp. 678, 682 (D. Md. 1972) ("While an agent is liable for *his own tortious* acts committed in the performance of his agency, he is not liable for the acts of other agents of his principal." (citations omitted)).  Thus, Ms. Garey may not rely upon a vicarious liability theory to support her MCPA claims against BWW, which are entirely predicated upon SunTrust's actions.

Moreover, similar to her MCPA class claim, Ms. Garey also fails to plead facts establishing the reliance and actual damages elements of her individual MCPA claims.  Specifically, Ms. Garey does not plead facts showing she detrimentally relied upon any of the statements or actions alleged

23

of SunTrust, which are outlined in paragraphs 75 through 79, and 82 of her Complaint, either by taking an action she would otherwise not have taken, or by refraining from taking actions she otherwise would have taken. *See Turner*, 2015 WL 5021390, at *5. Ms. Garey also fails to plead facts showing she suffered an objectively identifiable actual injury or loss as a result of SunTrust's alleged actions. *Robinson,* 2015 WL 4994491, at *4. Instead, Ms. Garey relies only upon conclusory statements to support these elements of her individual MCPA claims, Compl. at ¶¶ 80, 84, which are not entitled to the presumption of truth. *See Iqbal*, 129 S. Ct. at 1949-50.

Thus, Ms. Garey cannot maintain a viable MCPA claim against BWW solely related to SunTrust's alleged actions. Further, Ms. Garey has not pled sufficient facts to establish the elements of a viable MCPA claim. For these reasons, Ms. Garey's individual MCPA claims must be dismissed.

WHEREFORE, BWW respectfully requests that this Court grant its Motion to Dismiss, dismiss Ms. Garey's claims with prejudice, and grant BWW such further relief that the Court deems appropriate.

Dated: February 3, 2020                                    Respectfully submitted,


                                                          /s/ Matthew Cohen
                                                          Matthew Cohen, Esq.
                                                          Federal Bar No. 16709
                                                          BWW Law Group, LLC
                                                          6003 Executive Boulevard, Suite 101
                                                          Rockville, Maryland 20850
                                                          (301) 961-6555, ext. 3794 (phone)
                                                          (301) 961-6473 (fax)
                                                          matt.cohen@bww-law.com