**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| MONICA GAREY, | * | |
| Plaintiff, | * | |
| v. | * | Case No. PWG-19-3112 |
| BWW LAW GROUP, LLC, et al., | * | |
| Defendants. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS SUNTRUST MORTGAGE, INC. AND SUNTRUST BANK'S**
**CONSOLIDATED MOTION TO DISMISS CLASS ACTION COMPLAINT**
**OR, IN THE ALTERNATIVE, MOTION TO STRIKE CLASS ALLEGATIONS**

Brian L. Moffet
Michael B. Brown
MILES & STOCKBRIDGE P.C.
100 Light Street
Baltimore, MD 21202
410.727.6464
bmoffet@milesstockbridge.com
mbbrown@milesstockbridge.com

Matthew A. Egeli
EGELI LAW FIRM, PLLC
108 D MacTanly Place, P.O. Box 3208
Staunton, VA 24402-3208
(540) 569-2690
matthew@egelilaw.com

*Counsel for SunTrust Mortgage, Inc.*
*and SunTrust Bank*

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ........................................................................................................ i

**INTRODUCTION** .......................................................................................................... 1

**FACTUAL BACKGROUND** ......................................................................................... 2

**ARGUMENT** ................................................................................................................. 6

    **I.**    **MOTION TO DISMISS** ................................................................................. 6

        A.  Standard of Review ........................................................................................ 6

        B.  Counts Two, Three, Four, Six, Seven, and Eight of the Complaint Are Impermissible Collateral Attacks on the Foreclosure Judgment and Must Be Dismissed as *Res Judicata*. ................. 6

        C.  Even if Not Barred as Res Judicata, Plaintiff's MCDCA, MCPA, and MMFPA Claims Should Be Dismissed Because They Are Not Pled With Particularity. .......................................................... 7

        D.  Plaintiff Fails to State a Plausible RESPA Claim (Count Nine) ................... 8

        E.  Plaintiff Fails to State a Plausible TILA Claim (Count Ten) ...................... 11

    **II.**   **MOTION TO STRIKE CLASS ALLEGATIONS** ....................................... 14

        A.  Standard of Review ...................................................................................... 14

        B.  Plaintiff Offers Only Conclusory "Class Action Allegations"; These Allegations Fail to Show How Class-Wide Treatment Is Appropriate ......................................................... 15

        C.  Plaintiff's Claims Involve Individualized Issues Not Susceptible to Class-Wide Treatment ............................................... 16

        D.  Plaintiff and Her Counsel Cannot Adequately Represent the Interests of the Putative Class ............................................... 17

**CONCLUSION** ............................................................................................................ 19

# INTRODUCTION

Defendants SunTrust Mortgage, Inc., and SunTrust Bank (collectively, "SunTrust"),[1] respectfully submit this Memorandum of Law in support of their Consolidated Motion to Dismiss Class Action Complaint (ECF No. 23) filed by Plaintiff Monica Garey ("Plaintiff" or "Garey") or, in the Alternative, Motion to Strike Class Allegations.

Plaintiff's scattershot Complaint includes both individual and putative class claims under federal and state consumer protection statues: the Maryland Consumer Debt Collection Act (MCDCA), Md. Code, Com. Law. ("CL"), § 14-201, *et seq.*, Maryland Consumer Protection Action (MCPA), CL § 13-101, *et seq.*; Maryland Mortgage Fraud Protection Act (MMFPA), Md. Code, Real Prop., § 7-401, *et seq.*; the Real Estate Settlement Practices Act (RESPA), 12 U.S.C. § 2601, *et seq.*; and the Truth in Lending Act (TILA), 15 U.S.C. § 1601, *et seq.* As explained in detail below, however, Plaintiff's claims are either barred as *res judicata*, are inadequately pled, or simply fail to state a plausible claim for relief, and should be dismissed. Given that Plaintiff twice has been advised of the defects in her pleadings and already has taken one opportunity to amend, SunTrust respectfully submits that dismissal should be *with prejudice*.[2]

Alternatively, in the event that Plaintiff's putative class claims (Counts Two, Three, and Four as to SunTrust) were to survive dismissal, the class allegations should be stricken from the Complaint because they involve individualized issues not susceptible to class-wide treatment and because Plaintiff and her Counsel cannot adequately represent the interests of the putative class.

---

[1] SunTrust Mortgage, Inc. merged into SunTrust Bank in August 2018. On December 7, 2019, SunTrust Bank merged into Branch Banking and Trust Company, which changed its name to Truist Bank. *See* Am. L.R. 103.3 Corp. Disclosure Statement (Jan. 3, 2020) (ECF No. 22).

[2] In the event that this Court determines that any or all of Plaintiff's claims were instituted (or perpetuated) in bad faith and/or without substantial justification, SunTrust respectfully requests that it be awarded as a sanction its reasonable attorney's fees and costs incurred litigating this action.

# FACTUAL BACKGROUND

SunTrust adopts and incorporates by reference the "Statement of Alleged Facts" in Defendant BWW Law Group, LLC's Motion to Dismiss ("BWW's Motion"). (ECF No. 28-1 at pp. 1-3). SunTrust supplements this factual background as follows:

Following Plaintiff's default on her mortgage, Plaintiff submitted an initial application for loss mitigation assistance in June 2016. (Compl. ¶ 7 (loan included "provisions that provide the borrower with extra protections in the event of default.")). SunTrust later determined that Plaintiff's loan was not eligible for loss mitigation assistance and, on October 25, 2016, mailed Plaintiff a letter advising her that her initial application for loss mitigation assistance had been denied. (*Id.* ¶ 9). *See* Oct. 25, 2016 letter attached as **Exhibit 1**.[3] The letter also advised Plaintiff that she could be approved for a conditional short sale of the property, and instructed her to return a "Conditional Approval Letter" by November 14, 2016 if she wished to do so. *Id.* On December 19, 2016, SunTrust advised Plaintiff that no short sale contract had been obtained and that the conditional short sale approval had expired. *See* Dec. 19, 2016 letter attached as **Exhibit 2**.

More than one year later, on February 28, 2018, SunTrust issued Plaintiff a notice of intent to foreclose on the Property. *See* Feb. 28, 2018 notice, attached as **Exhibit 3**. Plaintiff then submitted a second application for loss mitigation assistance, which SunTrust acknowledged by letter dated April 5, 2018. (Compl. ¶ 12). *See* Apr. 5, 2018 letter, attached as **Exhibit 4**. The April 2018 letter specifically advised Plaintiff that she had failed to provide four documents needed to review her renewed request for loss mitigation assistance. *Id.* By letter dated May 11, 2018, SunTrust provided Plaintiff an additional opportunity to produce the fully completed materials.

---

[3] For purposes of completeness, Exhibit 1 includes a separate letter, also dated October 25, 2016, which explains the short sale process. Similar letters describing the short sale process are also included in Exhibits 6 and 10, *infra*.

(Compl. ¶ 13).  *See* May 11, 2018 letter, attached as **Exhibit 5**.  Plaintiff produced the missing materials, and SunTrust again considered Plaintiff's application for loss mitigation assistance.  However, SunTrust again determined that Plaintiff's loan was not eligible for loss mitigation assistance and, on June 5, 2018, mailed Plaintiff a letter stating that the application for loss mitigation assistance was denied.  (Compl. ¶14).  *See* June 5, 2018 letter, attached as **Exhibit 6**.

On October 25, 2018, SunTrust sent Plaintiff a Notice of Intent to Foreclose.  (Compl. ¶ 16).  *See* Oct. 25, 2018 notice, attached as **Exhibit 7**.  The Notice states, in pertinent part, that: "If you do not bring the loan current, otherwise cure the default, or reach an agreement with your mortgage company to avoid foreclosure…a foreclosure action may be filed in court as early as 45 days from the post mark date of this Notice."  *Id*.  Defendant BWW commenced foreclosure proceedings by filing an Order to Docket on December 12, 2018.  (Compl. ¶ 17).

Shortly after the commencement of foreclosure proceedings, Plaintiff submitted a third application for loss mitigation assistance to SunTrust. (Compl. ¶ 21). After several incomplete submissions, Plaintiff finally produced to SunTrust all documentation required to consider her loss mitigation application.  By letter dated March 11, 2019, SunTrust acknowledged the completion of the application on March 7, 2019.  *See* Mar. 11, 2019 letter, attached as **Exhibit 8**.  The pendency of Plaintiff's loss mitigation application is reflected in her monthly mortgage account statements.  Specifically, while her February 21, 2019 statement provides that "[t]he servicer has made the first notice of filing required by applicable law for foreclosure as of 12/12/2018," the March 20, 2019 account statement contains no such notation. (Compl. ¶ 19).  *See* Plaintiff's Feb. 21, 2019, Mar. 20, 2019, Apr. 9, 2019, May 5, 2019, and June 10, 2019 account statements, collectively attached as **Exhibit 9**.  Consistent with the fact that her loan was in the loss mitigation process, Plaintiff's

April 9, 2019 and May 9, 2019 account statements also do not include the foreclosure notation. (Compl. ¶ 19). *See* Ex. 9.

By letter dated March 27, 2019, SunTrust offered Plaintiff the opportunity to complete a conditional short sale settlement. (Compl. ¶ 21). *See* Mar. 27, 2019 letter, attached as **Exhibit 10**. The letter stated Plaintiff that must complete certain enclosed forms by April 16, 2019 in order to accept the conditional approval. *Id.* Based on its review of the materials provided by Plaintiff as part of the loss mitigation process, however, SunTrust ultimately decided to disengage her loan from the loss mitigation process. (Compl. ¶ 22). SunTrust advised Plaintiff by letter dated June 4, 2019 that the loan had been disengaged from the loss mitigation process because no response to the counteroffer request had been provided. *See* June 4, 2019 letter, **Exhibit 11**. The termination of Plaintiff's loss mitigation application is reflected in her monthly mortgage account statements. Specifically, while the May 9, 2019 account statement contains no notation reflecting the pending foreclosure proceedings, the June 10, 2019 statement states that "[t]he servicer has made the first notice of filing required by applicable law for foreclosure as of 12/12/2018." *See* Ex. 9 (May 5, 2019, and June 10, 2019 account statements).

The foreclosure action proceeded, and a sale was scheduled for August 20, 2019. (Compl. ¶ 38). By letter dated August 10, 2019 and received by SunTrust on August 14, 2019, Plaintiff requested that the foreclosure auction be cancelled.[4] (Compl. ¶ 33). *See* August 10, 2019

---

[4] While the Complaint alleges that Plaintiff also sent SunTrust a letter on August 18, 2019, SunTrust cannot locate any such correspondence in its records.

letter, attached as **Exhibit 12**.[5]  SunTrust responded to Plaintiff's letter the same day it was received, August 14, 2019, and advised Plaintiff that additional time was required to provide a thorough response.  *See* Aug. 14, 2019 letter, **Exhibit 13**.  *Compare id. with* Compl. ¶ 39 ("SunTrust never provided a written response to Ms. Garey's inquiries.").  SunTrust provided a complete response to Plaintiff's August 10 request by letter dated August 23, 2019.  *See* August 23, 2019 letter, attached as **Exhibit 14**.  *Compare id. with* Compl. ¶ 39.  Among other things, the August 23 letter states that SunTrust is "unable to provide the payoff statement or a reinstatement amount on this account as the figures would be considered invalid since the foreclosure sale was conducted August 20, 2019."  Ex. 14.  *See* Compl. ¶ 20 ("On August 20, 2019, Defendants conducted the foreclosure sale and the Defendants bought the Property back.").

Plaintiff filed her Complaint in this action on October 25, 2019.  (ECF No. 1).  On October 30, 2019, the Circuit Court for Charles County entered an Order ratifying the foreclosure sale.

---

[5] Notably, the August 10 letter is not signed by Ms. Garey.  Moreover, though dated August 10, 2019, the letter's envelope indicates that it was not sent until the afternoon of August 12, 2019.  *See* Ex. 12 at p. 4. Troublingly, the envelope bears the following return address: "**Thomas Alston / 10012 Cedarhollow Ln / Upper Marlboro MD 20774**".  Thus, this letter appears to have been prepared and sent by Thomas Alston from his residential address in Maryland—not by Ms. Garey and not from the offices of Mr. Styles in the District of Columbia, where it has been represented that Alston is employed as a paralegal.  Given that the letter appears to reflect the provision of legal services from an address in Maryland and regarding Maryland law, it bears further note that neither Alston nor Mr. Styles is a member of the Maryland Bar.

**ARGUMENT**

## I.  <u>MOTION TO DISMISS</u>

To the extent that Plaintiff's claims under the MCDCA, MCPA, and MMFPA seek to undermine the judgment entered in the foreclosure proceeding, these claims are barred by *res judicata*. Even if these claims were to survive this bar, they are inadequately pled and otherwise fail to state a claim for relief—particularly given that Plaintiff's allegations sound in fraud. Plaintiff's RESPA and TILA claims should be dismissed because they are directly contradicted by documents which are integral to the Complaint[6] and fail to state a plausible claim for relief.

### A.  <u>Standard of Review</u>.

SunTrust adopts and incorporates by reference the "Standard of Review" for motions to dismiss pursuant to Rule 12(b)(6) set forth in BWW's Motion. (ECF No. 28-1 at pp. 3-5).

### B.  **Counts Two, Three, Four, Six, Seven, and Eight of the Complaint Are Impermissible Collateral Attacks on the Foreclosure Judgment and Must Be Dismissed as *Res Judicata*.**

SunTrust adopts and incorporates by reference BWW's discussion of the reasons why Plaintiff's claims under the MCDCA (**Count Two** (Class); **Count Six** (Individual)) and MCPA (**Count Three** (Class)) are barred as *res judicata*. (ECF No. 28-1 at 5-8). The arguments raised by BWW apply with equal force to SunTrust. *See Proctor v. Wells Fargo Bank, N.A.*, 289 F. Supp. 3d 676, 683 (D. Md. 2018) ("Indeed, when a substitute trustee 'prosecute[s] [a] state court foreclosure action on behalf of [a mortgage servicer], which in turn serviced the underlying

---

[6] In ruling on a motion to dismiss, "[a] court may properly consider documents that are explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits....A court may also consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Strickland-Lucas v. Citibank, N.A.*, 256 F. Supp. 3d 616, 622–23 (D. Md. 2017) (internal quotations and citations omitted). *See also Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).

6

mortgage on behalf of [the lender],' the servicer, lender and substitute trustee share 'the same right to foreclose on the [subject] mortgage,' such that 'the privity component of claim preclusion is satisfied.'") (quoting *Jones v. HSBC Bank USA, N.A.*, 444 F. App'x 640, 644 (4th Cir. 2011)).

The same principles which doom Plaintiff's claims in Counts Two, Three, and Six also doom Plaintiff's claims under the MMFPA (**Count Four** (Class); **Count Eight** (Individual)) and MCPA (**Count Seven** (Individual)). That is, to the extent that Plaintiff's claims under the MMFPA and MCPA may be discerned,[7] it is clear that these claims arise out of the already litigated foreclosure action and that any decision in favor of Plaintiff on these claims would undermine the essential foundations of the judgment entered by the state court in that case. *See* Compl. ¶ 58 ("Defendants committed Mortgage Fraud…[*sic*] knowingly making, as described herein, deliberate misstatements and misrepresentations, ***including threatening to acquire title and evict the Plaintiff***…well in-advance of the actual time that Defendants could obtain title and evict Plaintiff…") (emphasis added); *id.* ¶ 83 ("As a result of SunTrust's failure to respond to Plaintiff's inquiry, the Plaintiff incurred additional fees, costs, charges, interests [*sic*] and penalties, ***illegal foreclosure, lost [*sic*] of home***…"). Simply stated, if Plaintiff believed that SunTrust was acting improperly and was not acting in accord with applicable law during the foreclosure process, then the time for Plaintiff to challenge such conduct *was during the foreclosure proceeding*. Now that a final judgment has been entered in that case, Plaintiff cannot challenge that judgment here.

### C. Even if Not Barred as *Res Judicata*, Plaintiff's MCDCA, MCPA, and MMFPA Claims Should Be Dismissed Because They Are Not Pled With Particularity.

Even if Plaintiff's claims under the MCDCA, MCPA, and MMFPA were not barred as *res judicata*, the claims still should be dismissed because Plaintiff has not pled these claims with

---

[7] *See infra* (explaining that Plaintiff has failed to pled MMFPA claims with particularity).

particularity. It is well-settled that statutory claims under the MCDCA, MCPA, and MMFPA must be pled with particularity as required under Rule 9(b) where those claims sound in fraud. *See, e.g.*, *Butler v. Citizens Bank, N.A.*, RDB-17-3417, 2018 WL 2840413, at *4 (D. Md. June 11, 2018) ("A claim brought under the MCDCA is also subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b)."); *Marchese v. JPMorgan Chase Bank, N.A.*, 917 F. Supp. 2d 452, 468 (D. Md. 2013) (Russell, J.) ("[T]he MCPA claim sounds in fraud, and is therefore subject to the heightened pleading requirement of Federal Rule of Civil Procedure 9(b)."); *Galante v. Ocwen Loan Servicing LLC*, ELH-13-1939, 2014 WL 3616354, at *28 (D. Md. July 18, 2014) (collecting cases requiring MMFPA claims to be pled with particularity). Because Plaintiff's claims sound in fraud, but rely on only conclusory allegations of any "knowing" or "deliberate" misstatement or misrepresentation and fail to explain how any of these alleged statements were false, the MCDCA, MCPA, and MMFPA claims fail at the threshold and must be dismissed. *See* Compl. ¶¶ 10-11, 15, 22, 28, 51, 58, 63, 69, 75-79, 86 (alleging false statements and misrepresentations).[8]

### D. <u>Plaintiff Fails to State a Plausible RESPA Claim (Count Nine).</u>

The gravamen of Plaintiff's RESPA claim is that SunTrust failed to respond to Plaintiff's letters within five days, as required under the statute. (Compl. ¶¶ 92-93). Plaintiff's claim fails as a matter of law for two principal reasons. First, Plaintiff has not alleged sufficient facts to show that either her August 10, 2019 letter or her purported August 18, 2019 letter constituted a "Qualified Written Request" as that term is defined under RESPA. 12 U.S.C. § 2605(e)(1)(B). Indeed, while Plaintiff alleges that she requested that SunTrust cancel the imminent, August 20, 2019 foreclosure sale, her alleged requests do not relate to the servicing of the loan, do not seek

---

[8] Given that Plaintiff has pled 'tag-along' MCPA claims premised on the MCDCA claims (Compl. ¶¶ 55, 81), Plaintiff's failure to state an MCDCA claim also dooms her class MCPA claim in full and her individual MCPA claim in part.

regulated account information, and are not the type of requests contemplated by the statute.

Section 2605(e)(2) of RESPA requires a mortgage servicer to:

> (A) ***make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties***, and transmit to the borrower a written notification of such correction […];
>
> (B) after conducting an investigation, ***provide the borrower with a written explanation or clarification that includes***—
>
>> (i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer;…
>
> (C) after conducting an investigation, ***provide the borrower with a written explanation or clarification that includes***—
>
>> (i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer;

12 U.S.C.A. § 2605(e)(2) (emphases added). *See also* 12 C.F.R. § 1024.36. Neither the statute itself nor the accompanying regulations contemplates a lender taking action to cancel an imminent foreclosure sale in response to a qualified written request. This is for good reason, as there already exists a forum in which to challenge procedural errors committed during a foreclosure: the foreclosure proceeding itself. Moreover, applicable regulations expressly treat the one piece of information requested by Plaintiff—a payoff quote—as not constituting a Qualified Written Request under RESPA. *See* 12 C.F.R. § 1024.36(a) ("A request for a payoff balance need not be treated by the servicer as a request for information."). Thus, Plaintiff's August 10 and purported August 18 letters are outside of the purview of the statute, and Plaintiff is unable to state a plausible claim for a violation of RESPA.

Second, Plaintiff's RESPA claims fail for an additional and independent reason: SunTrust did respond to Plaintiff's August 10, 2019 letter. *See* Ex. 13 and Ex. 14. The August 10 letter is expressly referenced in SunTrust's August 14 and August 23 responses to Plaintiff, and Plaintiff

has not alleged any defects in the content of those letters—only the (mistaken) assertion that no response was given. (Compl. ¶ 39). For this reason, Plaintiff's claim based on the August 10 letter is implausible and should be dismissed.

With respect to Plaintiff's purported August 18, 2019 letter, SunTrust is unable to locate any such correspondence in its records. While the very existence of such a letter is itself doubtful,[9] the allegations in the Complaint indicate that the very earliest that SunTrust could have received such a letter at its Richmond, Virginia mailbox was August 20, 2019—the same day that the foreclosure sale occurred. That is, August 18, 2019 was a Sunday. The letter would not have been picked up by the postal service until some time on Monday, August 19. Even assuming unusually speedy processing, the absolute earliest that the letter would have been delivered from Plaintiff's address in Charles County, Maryland to SunTrust's mailbox in Richmond would have been Tuesday, August 20, leaving SunTrust with, quite literally, no time to respond to the request before the foreclosure sale took place. What is also known from the allegations in the Complaint is that Plaintiff's April 10 letter and her April 18 letter are identical such that SunTrust's August 23, 2019 letter in response to Plaintiff's August 10 inquiry fully addressed the issues raised in the purported August 18 letter and therefore any response to the purported August 18 letter would have been duplicative of SunTrust's response to the August 10 letter. *Compare* Compl. ¶¶ 33-34 *with id.* ¶ 37 (alleging flaws in foreclosure proceedings and requesting payoff quote). Assuming the truth of these allegations, SunTrust had no legal obligation to respond to the purported August 18 letter to the extent it even exists. *See* 12 C.F.R. § 1024.35(g) and 12 C.F.R. § 1024.36(f) (providing that

_____

[9] Given that Plaintiff is pursuing a claim under 12 U.S.C.A. § 2605(e) in spite of the fact that SunTrust sent not one, but two letters in response to Plaintiff's August 10 letter, SunTrust submits that there is reason to doubt whether the purported August 18 letter even exists.

servicers do not have to comply with the otherwise applicable requirements if they reasonably determine that the QWR is "duplicative").

In sum, because Plaintiff's August 10 and purported August 18 letters did not constitute Qualified Written Requests under RESPA, and because SunTrust <u>did</u> respond to Plaintiff's August 10 letter by correspondence dated August 14 and August 23, Plaintiff fails to state a plausible claim for relief under RESPA, and Count Nine of the Complaint should be dismissed.[10]

### E. **Plaintiff Fails to State a Plausible TILA Claim (Count Ten)**.

Plaintiff's TILA claim is premised on alleged omissions relating to Plaintiff's monthly mortgage statements. (Compl. ¶¶ 100-103). The reasons why the claim fails are addressed in turn.

- **Alleged failure "to provide accurate cure amount in the periodic mortgage statement." (Compl. ¶ 100).**

Plaintiff points to a single instance where SunTrust allegedly failed to provide an accurate cure amount. The Complaint alleges that "SunTrust claimed the amount due to reinstate the loan was $63,704.02," and posits that, based on the amount due one year earlier in April 2018, "the amount claimed due in April 2019 was inflated by at least $3,000.00." (Compl. ¶ 18).

Plaintiff's allegations are based on an obvious disregard for the enumerated charges listed on the second page of her monthly account statements. Among other things, the enumerated charges include disbursements made for appraisal fees incurred in connection with loss mitigation activities, title search fees, foreclosure filing fees, foreclosure attorney's fees, foreclosure recording costs, and certified mail costs.[11] *See* Ex. 9 (Feb. 21, 2019 account statements). Given

---

[10] Because Plaintiff herself fails to allege any violation of RESPA, her allegations that SunTrust's conduct somehow "constitute[s] a 'pattern or practice' of noncompliance," are similarly implausible and should be disregarded and/or stricken from the Complaint. (Compl. ¶¶ 95-96).

[11] Plaintiff does not allege that SunTrust was not entitled to charge such amounts to her account in connection with the foreclosure proceedings. Nor can she under the terms of the Deed of Trust.

that the February 2019 statement alone reflects $3,490.30 in such disbursements over the preceding six months, Plaintiff's claim that the pay-off amount was misstated is unsupportable.

- **Alleged failure "to provide notice that a foreclosure action had been filed in the periodic mortgage statement." (Compl. ¶ 101).**

Plaintiff fails to allege anywhere in the Complaint *when* it was that SunTrust omitted from the monthly mortgage statement a notice that a foreclosure action had been filed. On this basis alone, Plaintiff's claim should be dismissed.

However, a review of Plaintiff's monthly account statements shows, contrary to Plaintiff's present assertions, compliance with the law and, specifically, with RESPA regulations which prohibit the "dual tracking" of a defaulted loan. *See* 12 C.F.R. § 1024.41(g). *See Green-Wright v. JPMorgan Chase Bank, N.A.*, ELH-17-3199, 2018 WL 3756714, at *10 (D. Md. Aug. 7, 2018) (discussing dual-tracking regulations). As noted above, Plaintiff's February 21 and June 10 account statements <u>include</u> notations reflecting the foreclosure proceedings whereas Plaintiff's March 20, April 9, and May 9 statements <u>do</u> <u>not</u> <u>include</u> such notations. This difference reflects the fact that from March 11 through June 5, 2019, Plaintiff's loan was in the loss mitigation process. *See* Ex. 9. Thus, contrary to Plaintiff's present complaints, it would have been improper for SunTrust *to include* foreclosure notations on the March, April, or May account statements. Had SunTrust done so, Plaintiff would likely be accusing SunTrust of violating RSPA's prohibition against "dual tracking." In short, SunTrust's compliance with RESPA simply cannot give rise to a plausible claim under TILA.

- **Alleged failure "to provide periodic mortgage statement on a regular (i.e.) monthly basis." (Compl. ¶ 102).**

Plaintiff fails to allege anywhere in the Complaint *when* it was that SunTrust failed to provide her a periodic mortgage statement. Such a conclusory allegation is insufficient to state a plausible claim for relief.

- **Alleged failure "to provide a payoff statement." (Compl. ¶ 103).**

Plaintiff fails to allege *when* it was that SunTrust failed to provide her a payoff statement. Such a conclusory allegation is insufficient to state a plausible claim for relief.

Nor is Plaintiff able to state a claim based on the August 10 and purported August 18 letters which she contends resulted in a RESPA violation. SunTrust received the August 10 letter on August 14, and responded to Plaintiff the same day, indicating that additional time was required to provide a thorough response. Ex. 13. Then, on August 23, 2019, seven business days after its receipt of the letter,[12] SunTrust sent to Plaintiff a more fulsome response, indicating that SunTrust could not provide a valid payoff amount "since the foreclosure sale [] was [already] conducted on August 20, 2019." Ex. 14. Plaintiff does not (and cannot) dispute SunTrust's assertion in the August 23 letter. Thus, Plaintiff's August 10 and purported August 18 letters do not support a plausible allegation that SunTrust failed to provide a payoff statement in violation of TILA.

---

For the foregoing reasons, Plaintiff's Complaint should be dismissed *with prejudice*.

---

[12] Notably, moreover, applicable TILA regulations only require the creditor or servicer to provide a payoff statement "within a reasonable time" where a loan is in foreclosure proceedings. 12 C.F.R. § 1026.36(c)(3).

## II.    MOTION TO STRIKE CLASS ALLEGATIONS

In the event Plaintiff's putative class claims (Counts One through Four)[13] were to survive dismissal, SunTrust respectfully submits that the class allegations still should be stricken from the Complaint because they involve highly individualized issues not susceptible to class-wide treatment and because Plaintiff and her Counsel cannot adequately represent the interests of the putative class. Given that Plaintiff's putative class allegations were added only after BWW identified numerous, fatal defects in the original complaint (ECF No. 8), it is apparent that these allegations were added for their *in terrorem* settlement effect only. This effect is not a legitimate basis on which to permit a putative class to proceed under Rule 23, and this Court has recognized that facially insufficient class allegations are properly stricken in the early phases of litigation. *See, e.g.*, *Ross-Randolph v. Allstate Ins. Co.*, DKC 99-3344, 2001 WL 36042162, at *4 (D. Md. May 11, 2001); *Williams v. Potomac Family Dining Grp. Operating Co., LLC*, GJH-19-1780, 2019 WL 5309628, at *4 (D. Md. Oct. 21, 2019).

### A.   Standard of Review.

"There is no presumption that class action should be allowed." *Ross-Randolph*, 2001 WL 36042162, at *4 (quoting *Windham v. American Brands, Inc.*, 565 F.2d 59, 64 n. 6 (4th Cir.1977)). Preemptive motions to strike class allegations are governed by the same standards which apply to motions to certify a class under Rule 23. *Stanley v. Cent. Garden & Pet Corp.*, 891 F. Supp. 2d 757, 769 (D. Md. 2012) (Blake, J.) ("A court need not wait until class certification is sought to determine whether a party complies with Fed. R. Civ. P. 23."). "If a plaintiff fails to allege sufficient facts to meet the requirements of Rule 23, the court can order "the pleadings be amended to eliminate allegations regarding the representation of absent persons. . . ." *Id.* (quoting Fed. R.

---

[13] Only Counts Two, Three, and Four are against SunTrust; Count One is against BWW only.

14

Civ. P. 23(d)(4), now Fed. R. Civ. P. 23(d)(1)(D)). "The party seeking to maintain a class action bears the burden of proving class action status is appropriate by meeting the requirements under Rule 23." *Ross-Randolph*, 2001 WL 36042162, at \*4.

Thus, in order to survive a preemptive motion to strike class allegations, Plaintiff must demonstrate that the factual allegations in the Complaint, if true, would satisfy the requirements for class certification under Rule 23. "First, the class must satisfy the four prerequisites in Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. If those requirements are met, the court must then determine if the class fits into one of the categories outlined in Rule 23(b)." *Stanley*, 891 F. Supp. 2d at 770.

**B. Plaintiff Offers Only Conclusory "Class Action Allegations"; These Allegations Fail to Show How Class-Wide Treatment Is Appropriate.**

Plaintiff's "Class Action Allegations" are nothing more than rote recitations of the requirements for class certification. (Compl. ¶¶ 40-45). While Plaintiff asserts that "the classes are so numerous that it is impracticable to join all members of the classes to this action," Plaintiff is merely paraphrasing the requirement of Rule 23(a)(1); Plaintiff states no *facts* which would tend to show (a) that any other person—much less a class—had an experience similar to hers, or (b) the size of that class of persons. (*Id.* ¶ 41). Thus, Plaintiff's class allegations fail to allege numerosity. Plaintiff's allegations regarding typicality and adequacy are no different. (*Id.* ¶¶ 43-44). Although Plaintiff's commonality allegations point to three, case-related "common questions of law and fact," these questions are strikingly vague and fail to show why class treatment is warranted; to the contrary, these questions do little, if anything, to advance the claims or tend to show that class treatment would <u>not</u> be appropriate because they seek to inquire into Defendants' subjective knowledge in dealing with a purported class of borrowers. (*Id.* ¶ 42(b) (sic)).

Plaintiff's enumerated "class" counts fare no better, offering only rote recitations of the statutory claims alleged. In fact, to the extent that Plaintiff seeks to recover actual damages—including individualized damages for "out-of-pocket costs and fear or worry of being kicked out of the Property"—under the MCDCA, MCPA, and MMFPA, Plaintiff's own allegations show that class-wide adjudication would not be practicable or manageable. (Compl. ¶¶ 52, 56, 60).

In sum, because Plaintiff has not even alleged sufficient facts to show that a class of similarly-situated persons even exists—much less sufficient facts to satisfy the elements of Rule 23(a)—her putative class allegations should be stricken from the Complaint.

### C. Plaintiff's Claims Involve Individualized Issues Not Susceptible to Class-Wide Treatment.

Beyond the fact that Plaintiff's "Class Action Allegations" themselves tend to show that her claims are not susceptible to class-wide treatment, her broader allegations against SunTrust also confirm the highly individualized nature of the instant proceedings. For instance, the bulk of Plaintiff's claims arise out of her own course of correspondence with SunTrust, including whether, when, and what SunTrust wrote in response to Plaintiff's specific inquiries. *See* Compl. ¶¶ 9-18, 32-37. Plaintiff has not alleged—and there is no reason to believe—that the responses which SunTrust sent to Plaintiff are identical to those sent to any other person. This failure undermines Plaintiff's ability to establish liability on a class-wide basis.

Moreover, it is unclear how the actual damages sought in the class claims under the MCDCA, MCPA, and MMFPA can be decided on anything other than an individualized basis. (Compl. ¶¶ 52, 56, 60). Individuals who have defaulted on loans and who are going through the foreclosure process undoubtedly come from a wide variety of circumstances and engage in different conduct. As such, the expenses that one person will incur responding to foreclosure necessarily vary from one person to another. So, too, will one individual's emotional response to

foreclosure necessarily vary from one person to another. How actual damages could be proven, much less awarded, on a class-wide basis is far from readily discernible and borders on the impossible.

Thus, because Plaintiff's claims involved highly individualized inquiries, they are not susceptible to class-wide treatment, and the putative class allegations should be stricken.

### D. Plaintiff and Her Counsel Cannot Adequately Represent the Interests of the Putative Class.

"To demonstrate adequacy of representation, a plaintiff's interests must not be opposed to those of other class members and *the plaintiffs' attorneys must be qualified, experienced, and able to conduct the litigation*." *Stanley*, 891 F. Supp. 2d at 770. In this case, there are significant reasons to doubt whether Plaintiff's Counsel satisfies these criteria.

*First*, a review of this Court's CM/ECF docket indicates that Plaintiff's Counsel Mr. Styles has not even moved for class certification in any of the seventeen (17) cases which he has filed in this Court since 2017.[14] In fact, only this case and one other case in which Mr. Styles serves as counsel is styled as a putative class action. *See Best v. Newrez, LLC, et al.*, 8:19-cv-02331-GJH (filed Aug. 14, 2019). Notably, the amended complaint in that action is subject to a pending Motion to Dismiss. Nor does it appear that Mr. Styles has any other experience serving as class counsel in any other federal court.[15] Indeed, of the nineteen (19) cases which Mr. Styles has filed

---

[14] *See* D.Md. Case Nos. 1:18-cv-02538-ADC; 1:18-cv-02540-PX; 1:18-cv-02728-CCB; 1:19-cv-03530-GLR; 1:19-cv-03627-JMC; 1:20-cv-00182-RDB; 1:20-cv-00228-BPG; 8:17-cv-00314-GJH; 8:17-cv-02938-CBD; 8:17-cv-03278-TDC; 8:18-cv-00170-CBD; 8:19-cv-01475-TJS; 8:19-cv-02331-GJH; 8:19-cv-02495-PJM; 8:20-cv-00311-PX; 8:20-cv-00356-CBD.

[15] A PACER search for Mr. Styles does not reflect his appearance in any federal court other than the District of Maryland and the District of Columbia.

in the United States District Court for the District of Columbia since 2006[16] only two are styled as class actions and in neither one has he even moved for class certification. *See Rivera v. Equifax Info. Servs., LLC, et al.,* 1:15-cv-00137-CKK (filed Jan. 27, 2015); *Estate of Carolyn Mickens v. Ocwen Loan Servicing, LLC, et al.,* 1:18-cv-00928-KBJ (filed Apr. 19, 2018). The *Rivera* action resulted in a stipulated voluntary dismissal, and the *Mickens* action is subject to a pending Motion to Dismiss. In short, Counsel's lack of experience litigating any aspect of a putative class action raises serious doubts about his adequacy to ever serve as class counsel in this case.

*Second*, Mr. Styles' conduct before this Court in other matters and his affiliation with Thomas Alston also raise questions about his adequacy to serve as class counsel. With respect to Counsel's conduct, Judge Copperthite of this Court recently entered an order awarding sanctions against Mr. Styles personally based on his filing of fraudulent and frivolous claims in that action. *Miller v. Trident Asset Mgmt., LLC*, ADC-18-2538, 2019 WL 6528610 (D. Md. Dec. 4, 2019). As the Court there stated:

> The troubling aspects of this case do not stop with Plaintiff's fraud upon this Court, a fraud that resulted in settlement of other claims against some Defendants and dismissals against other Defendants. It seems that Thomas Alston, the paralegal who admitted he assisted Plaintiff in her efforts, has possibly run out of relatives. As Judge Hazel of this Court noted, "the Alston family is engaged in, and profiting from, 'an enterprise of [FCRA] litigation.'"

*Miller*, 2019 WL 6528610, at *3 (quoting *Alston v. Branch Banking & Tr. Co.*, GJH-15-3100, 2018 WL 4538538, at *3 (D. Md. Sept. 20, 2018), *aff'd sub nom. Alston v. TransUnion, LLC*, 789 F. App'x 396 (4th Cir. 2020), (in turn quoting *Alston v. Creditors Interchange Receivable Mgmt., LLC*, DKC-12-1708, 2012 WL 4370124 at *1 (D. Md. Sept. 21, 2012). *See also Alston v. Experian*

---

[16] *See* D.D.C. Case Nos. 1:2006cv00364; 1:2009cv01901; 1:2010cv00371; 1:2013cv00669; 1:2014cv01600; 1:2015cv00137; 1:2015cv00635; 1:2017cv01652; 1:2019cv00082; 1:2019cv00057; 1:2018cv00928; 1:2017cv01966; 1:2018cv00135; 1:2018cv01404; 1:2018cv01680; 1:2018cv02079; 1:2019cv03012; 1:2019cv03240; 1:2020cv00448.

*Info. Sols., Inc.*, PJM-15-3558, 2016 WL 4555056, at *7 (D. Md. Aug. 31, 2016) ("But there is more. The fact that Plaintiff's surname is "Alston" gives the Court considerable pause. An extraordinary number of FCRA cases have been filed in this Court by allegedly *pro se* "Alston" plaintiffs.") (collecting cases).  Although the named Plaintiff in this action does not bear the surname "Alston", Mr. Styles admitted during the February 6, 2020 teleconference with the Court that Thomas Alston has been participating in this case.  Given Alston's well-known track record before this Court, his participation in this case as a paralegal, even under Mr. Styles asserted superstition, raises serious questions about Mr. Styles and his law firm's adequacy to serve as counsel on behalf of anyone other than Plaintiff herself.

---

Thus, in the event that Plaintiff's putative class claims (Counts One through Four) were to survive dismissal, the class allegations should be stricken.

## CONCLUSION

For the foregoing reasons, Defendants SunTrust Mortgage, Inc. and SunTrust Bank respectfully submit that their Consolidated Motion to Dismiss Class Action Complaint, or, in the Alternative, to Motion to Strike Class Allegations should be GRANTED, that the Class Action Complaint should be DISMISSED WITH PREJUDICE, and that this case should be CLOSED. Alternatively, to the extent that Plaintiff's putative class claims survive the instant Motion to Dismiss, Defendants respectfully request that the class allegations be STRICKEN and that this case be permitted to proceed on an individual basis *only*.

Respectfully submitted,

*/s/ Brian L. Moffet*
Brian L. Moffet
Michael B. Brown
MILES & STOCKBRIDGE P.C.
100 Light Street
Baltimore, MD 21202
410.727.6464
bmoffet@milesstockbridge.com
mbbrown@milesstockbridge.com

*/s/ Matthew A. Egeli*
Matthew A. Egeli
EGELI LAW FIRM, PLLC
108 D MacTanly Place, P.O. Box 3208
Staunton, VA 24402-3208
(540) 569-2690
matthew@egelilaw.com

*Counsel for SunTrust Mortgage, Inc.
and SunTrust Bank*