**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| MONICA GAREY, | * | |
| Plaintiff, | * | |
| v. | * | Case No. PWG-19-3112 |
| BWW LAW GROUP, LLC, et al., | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**REPLY MEMORANDUM IN FURTHER SUPPORT OF**
**DEFENDANTS SUNTRUST MORTGAGE, INC. AND SUNTRUST BANK'S**
**CONSOLIDATED MOTION TO DISMISS CLASS ACTION COMPLAINT**
**OR, IN THE ALTERNATIVE, MOTION TO STRIKE CLASS ALLEGATIONS**

Defendants SunTrust Mortgage, Inc., and SunTrust Bank (collectively "SunTrust"),[1] respectfully submit this Reply Memorandum in further support of their Motion to Dismiss or, in the Alternative, to Strike Class Allegations (ECF No. 33) ("SunTrust's Motion").

Plaintiff Monica Garey's ("Plaintiff") Response in Opposition to SunTrust Motion (ECF No. 41) (the "Opposition") fails to address the fatal pleading and legal defects raised in SunTrust's Motion that doom her claims. Insofar as Plaintiff relies on a pre-*Twombly* standard of review, ignores recent, directly-on-point decisions of this Court, and purposefully misconstrues applicable regulations, the Opposition confirms the propriety of dismissal *with prejudice* of the Amended Complaint.

---

[1] SunTrust Mortgage, Inc. merged into SunTrust Bank in August 2018. On December 7, 2019, SunTrust Bank merged into Branch Banking and Trust Company, which changed its name to Truist Bank. *See* Am. L.R. 103.3 Corp. Disclosure Statement (Jan. 3, 2020) (ECF No. 22).

**A.** **The Opposition Incorrectly Points to a Pre-*Twombly* Standard of Review.**

The Opposition's standard of review (Opp. at 1-2) relies on a series of authorities that pre-date the Supreme Court's decisions in *Twombly* and *Iqbal*, which require the pleader to state a *plausible* claim for relief. To the extent Plaintiff's arguments are premised on an incorrect interpretation of the Federal Rules, they must be rejected.[2]

**B.** **The Opposition Ignores This Court's Recent Decision in *Cooke*, Which Dooms Counts Two, Three, Four, Six, Seven, and Eight as *Res Judicata*.**

In its recent decision in *Cooke v. Caliber Home Loans*, this Court explained in detail the reasons why a prior judgment entered in a state court foreclosure action bars the very claims asserted by Plaintiff in this action. *Cooke*, PWG-18-3701, 2020 WL 1434105, at *4-7 (D. Md. Mar. 24, 2020).[3] Notably, this Court squarely rejected the plaintiff's contention that the foreclosure proceeding was *in rem* only and that the state court lacked *in personam* jurisdiction over her because she did not voluntarily appear in the case. In particular, this Court explained that the Maryland Rules have been amended to provide much greater notice to the owner of the property to be foreclosed, and that once effective service is made in the foreclosure action, "'[t]he State can

---

[2] Notably, the Opposition's standard of review is identical to that in the plaintiff's brief filed in opposition to the motion to dismiss in *Cooke v. Caliber Home Loans, Inc.*, PWG-18-3701 (ECF No. 17). Counsel in that case, Quinn Lobato, has appeared in at least two other cases before this Court where the court found reason to note Thomas Alston's involvement. *See Johnson v. New York Cmty. Bank*, PX-17-3647, 2018 WL 2045543, at *1, n. 2 (D. Md. May 2, 2018) ("Although Plaintiffs claim they are pro se, the Court finds reason to believe that non-attorney Thomas Alston may be assisting Plaintiffs in ghostwriting their pleadings. Alston has a history of filing ghostwritten pleadings in this Court, including in other actions alleging similar claims to this one."); *Letren v. Roundpoint Mortgage Company et al.*, PWG-15-240 (Feb. 3, 2015) (ECF. No. 42) (ordering plaintiff to "provide a supplemental interrogatory response setting forth Thomas Alston's role with regard to the merits of this case. This response will provide time, date and place for, but not the content of, Plaintiff's communications with Alston regarding his claims in this case.").

[3] On July 9, 2020, the plaintiff in *Cooke* filed an untimely Motion for Reconsideration of this Court's March 24 Memorandum Opinion and Order. PWG-18-3701 (ECF No. 24). While it is doubtful whether this Court even will consider this untimely filing—the plaintiff there suggests that this Court's COVID-19 Local Orders should excuse her delay, but she was under no obligation to file a motion for reconsideration and, thus, did not stand to 'benefit' from Judge Bredar's orders extending filing deadlines—her motion merely rehashes the defenses which this Court already rejected and presents nothing for this Court to 'reconsider'.

do no more than give the litigant 'a day in court'; if he does not utilize it but suffers the decision to go against him by default, he is as conclusively and finally bound by it, as though he had actively contested it.'" *Id.* at *6 (quoting *Manigan v. Burson*, 862 A.2d 1037, 1041 (Md. Ct. Spec. App. 2004)). Thus, because "Cooke's Complaint includes allegations that she received notice of the intent to foreclose in June 2017, she was served a few days after the foreclosure action was filed in Circuit Court in August 2017, she was aware of the ongoing foreclosure procedures, she presented her claims to Defendants, she had prior knowledge of the foreclosure sale, and she complained to Defendants that the foreclosure sale was illegal a few days after it occurred," the state court foreclosure judgment precluded all subsequent claims arising out of that transaction. Accordingly, the *Cooke* plaintiff's FDCPA, RESPA, MCDCA, MCPA, MMFPA, and TILA claims were barred as *res judicata* and dismissed. *Id.* at *7.

The instant case is indistinguishable from *Cooke*. The Amended Complaint includes allegations that Plaintiff received multiple notices of SunTrust's intent to foreclose (ECF No. 23 at ¶¶ 9-16), she was aware of the ongoing foreclosure procedures (*id.* at ¶¶ 17-18, 24, 32), she presented her claims to SunTrust (*id.* at ¶¶ 34-37), she had prior knowledge of the sale (*id.* at ¶¶ 17-18, 24, 32), and that she complained to SunTrust about the foreclosure sale a few days *before* it occurred (*id.* at ¶¶ 34-37). Although the Amended Complaint artfully fails to mention that Plaintiff was served with the foreclosure action, there can be no doubt that effective service was made. Not only did the state court order the foreclosure sale to proceed, but it entered judgment based on, among other things, the affidavit of service filed in that case. The affidavit of service confirms that service was properly effected in accordance with Md. Code Ann., Real Prop. § 7-105.1(h)(5), which authorizes service by mailing and posting after two good faith efforts to

complete personal service are made.[4]  Thus, Plaintiff was duly served with process in the state foreclosure action, and the Opposition's reliance on *Jones*, *Markey*, and, quaintly, *Pennoyer v. Neff* are entirely misplaced.[5]

Accordingly, Plaintiff's claims in Counts Two, Three, Four, Six, Seven, and Eight are barred as *res judicata* and must be dismissed.  To the extent, moreover, that this Court were to determine that Plaintiff's RESPA and TILA claims (Counts Nine and Ten) arise out of the same transaction as the state foreclosure action, these claims also must be dismissed.[6]

**C.     The Opposition Confirms that Plaintiff's MCDCA, MCPA, and MMFPA Claims Are Subject to Rule 9(b)'s Heightened Pleading Standard—and that Plaintiff Fails to Meet This Standard.**

The Opposition's suggestion that Plaintiff's MCDCA, MCPA, and MMFPA (that is, Maryland Mortgage *Fraud* Protection Act) claims are not subject to Rule 9(b)'s heightened pleading standard is plainly inconsistent with the many allegations of the Amended Complaint, which are premised on misrepresentations and false statements—the essence of any fraud claim. *See* ECF No. 23 at ¶¶ 10, 11, 15, 22, 25, 26, 29, 30, 58, 62-63, 69, 75-80, 86-88.  To the extent that

---

[4] A true and correct copy of the affidavit of service filed in the state court foreclosure action is attached hereto as **Exhibit 15**, numbered consecutively from SunTrust's Motion.  This Court properly may consider the affidavit of service as a public record filed in the state court. *See Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir.2009) ("In reviewing a Rule 12(b)(6) dismissal, we may properly take judicial notice of matters of public record."); *Olson v. Midland Funding, LLC*, CCB-13-1882, 2013 WL 6717480, at *3, n.3 (D. Md. Dec. 18, 2013) (relying on *Philips* to consider affidavit of service filed in state district court collection action in deciding motions to dismiss), *aff'd*, 578 F. App'x 248 (4th Cir. 2014).

[5] Again, it is notable that the Opposition, filed on June 30, 2020, relies on the very same arguments and authorities as the plaintiff in *Cooke*—and which this Court squarely rejected in its opinion issued three months earlier on March 24, 2020.  *See Cooke*, PWG-18-3701 (ECF No. 17 at 2-5).

[6] SunTrust's Motion, filed more than a month before this Court's decision in *Cooke*, urges dismissal of Counts Nine and Ten on grounds other than *res judicata*.  However, given that the RESPA and TILA allegations in the *Cooke* complaint (PWG-18-3701, ECF No. 1-2) and the instant case (ECF No. 23) are substantially similar, the reasoning in this Court's opinion with respect to the preclusive effect of the state court foreclosure judgment applies with equal force here as to those claims.  If this Court finds that *res judicata* applies and precludes Plaintiff's claims, it need not even consider the remaining arguments in this Reply Memorandum.

Plaintiff now asserts that her claims *do not* sound in fraud—that is, are not premised on any misrepresentation or false statement—they would be facially implausible and subject to dismissal. Taking Plaintiff's allegations at face value, however, the claims do sound in fraud, are governed by Rule 9(b), and fail to satisfy the heightened pleading standard mandated by that rule.

While the Opposition attempts to explain how the Amended Complaint meets this pleading standard and puts SunTrust on notice of the claims against it, Plaintiff's arguments are, in fact, just as conclusory as the allegations in her Amended Complaint. *See* Opp. at 5 ("As pleaded in, or can be inferred by, the FAC, the Defendant SunTrust has made three separate and distinct misrepresentations. See FAC ¶¶ 9, 11, 14, 16, 18, 21-23 & 24."). The paragraphs cited in the Opposition offer only conclusory allegations of false statements—or are plainly inconsistent with the documents on which those same allegations rely. And to the extent Plaintiff's claims are premised on whether "SunTrust misrepresented that it would process Plaintiff's shortsale *in good faith*," whether "SunTrust refused to accept *reasonable offers* and demanded a purchase contract in excess value of the property," whether "SunTrust represented to Plaintiff that she could seek a shortsale without disclosing that SunTrust would not accept *a reasonable offer*," or whether "SunTrust omitted that it did not intend to process Plaintiff's shortsale request *in good faith*," (ECF No. 23, ¶¶ 22-23, 75-76 (emphasis added)), her *characterizations* of SunTrust's conduct are not legally actionable *factual statements or omissions*. In short, because Plaintiff has failed to state with particularity why or how any of the alleged statements or omissions was false or deceptive, she has failed to state a plausible claim against SunTrust. Accordingly, the MCDCA, MCPA, and MMFPA claims should be dismissed.

**D.** **The Opposition Points to Regulations and Cases Which Mandate Dismissal of Plaintiff's RESPA Claim.**

The Opposition tries to save Plaintiff's RESPA claim by invoking *Frank v. Wells Fargo Bank N.A.*, 2016 WL 6212524 (D. Colo. Oct. 11, 2016), and the regulations addressed therein— namely, 12 C.F.R. § 1024.35(e)(3)(i)(B) and 12 C.F.R. § 1024.35(f)(2). (Opp. at 7-10). Contrary to Plaintiff's argument, however, *Frank* and these regulations actually confirm that her RESPA claim is subject to dismissal.

As an initial matter, the Opposition fails to respond to SunTrust's argument that Plaintiff's letter does not constitute a Qualified Written Request (QWR) that would permit her to bring a claim under RESPA. Instead, Plaintiff tries to tip-toe around this argument, asserting that her letter should be construed as a notice of error. However, nowhere in the Opposition (or in the Amended Complaint itself) does Plaintiff explain how or why her request that SunTrust cancel the scheduled foreclosure sale amounts to a statement that "the account [was] in error." 12 U.S.C. § 2605(e)(1)(B). *See Falcocchia v. Saxon Mortg., Inc.*, 709 F. Supp. 2d 873, 883 (E.D. Cal. 2010) (dismissing RESPA claim because borrowers' letter that "demand[ed] to cancel the foreclosure sale under the…Deed of Trust [and] to rescind the loan for various violations under [TILA]" did not constitute a QWR).

Regardless, even if her letter was subject to the regulations governing notices of error, Plaintiff's RESPA claim still must be dismissed for the reasons set forth in *Frank*. That is, the very regulation on which Plaintiff relies—12 C.F.R. § 1024.35(e)(3)(i)(B)—requires the servicer to respond to a notice of error, "[p]rior to the date of a foreclosure sale or within 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error, whichever is earlier, for errors asserted under paragraphs (b)(9) and (10) of this section." 12 C.F.R. § 1024.35(e)(3)(i)(B). However, 12 C.F.R. § 1024.35(f)(2) specifically excuses the servicer from

complying with the times set forth in 12 C.F.R. § 1024.35(e), if the notice of error is received

"seven or fewer days before a foreclosure sale":

> Error asserted before foreclosure sale. *A servicer is not required to comply with the requirements of paragraphs (d) and (e) of this section for errors asserted under paragraph (b)(9) or (10) of this section if the servicer receives the applicable notice of an error seven or fewer days before a foreclosure sale*. For any such notice of error, a servicer shall make a good faith attempt to respond to the borrower, orally or in writing, and either correct the error or state the reason the servicer has determined that no error has occurred.

12 C.F.R. § 1024.35(f)(2) (emphasis added).

The Court in *Frank*—the chief authority cited in the Opposition—discussed this very

regulation and dismissed the plaintiff's RESPA claim as untimely:

> Plaintiffs allege that they submitted their NOE on September 16, 2013, which they claim was exactly seven days before the scheduled foreclosure sale on September 23, 2013. *See* 12 C.F.R. § 1024.35(f)(2); ECF No. 8 ¶21. From this allegation, I agree with defendant that it was not subject to the pre-foreclosure "review and respond" regulation found at 12 C.F.R. § 1024.35(e)(3)(i)(B). Rather, as the plain language of 12 C.F.R. § 1024.35(f)(2) makes clear, a servicer "is *not* required to comply with the requirements of *paragraph[ ] ... (e)* of this section ... if the servicer receives [the NOE] ... *seven* or fewer days before a foreclosure sale."

*Frank*, 2016 WL 6212524, at *4 (italics in original).

Plaintiff here fares no better. The Amended Complaint alleges that the foreclosure sale

was scheduled for August 20, 2019. (ECF No. 23 at ¶ 38). By letter dated August 10, 2019 and

***received by SunTrust on August 14, 2019***, Plaintiff requested that the foreclosure auction [which

was scheduled for and took place on August 20, 2019] be cancelled.[7] (ECF No. 23 at ¶ 33). *See*

August 10, 2019 letter (postmarked August 12). (Exhibit 12 to SunTrust's Motion). Because the

---

[7] While the Complaint alleges that Plaintiff also sent SunTrust a letter on August 18, 2019, SunTrust has not yet located any such correspondence in its records. Even if such a letter exists, an August 18 letter would have been received by SunTrust "seven or fewer days before a foreclosure sale," and, therefore, would not trigger any duty under 12 C.F.R. § 1024.35(e)(3)(i)(B) to respond before the sale. *See also* fn. 10, *infra.*

letter was received "seven or fewer days before a foreclosure sale," 12 C.F.R. § 1024.35(f)(2) applies, and SunTrust was not required to respond before the sale.[8]  Plaintiff's first attempt to 'save' her RESPA claim thus fails.

The Opposition's next attempt to save Plaintiff's RESPA claim—her argument that the payoff request in the August 10 letter constitutes a notice of error under 12 C.F.R. § 1024.35(b)(6)—is similarly unavailing.  (Opp. at 9).  Even assuming that SunTrust were under any duty to respond to this payoff request,[9] its response would have been due "[n]ot later than seven days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error for errors asserted under paragraph (b)(6) of this section."  12 C.F.R. § 1024.35(e)(3)(1)(A).  Based on SunTrust's receipt of Plaintiff's August 10 letter (postmarked August 12) on August 14, its response would have been due on August 23.  Because SunTrust provided a complete response to Plaintiff's August 10 request by letter dated August 23, 2019, her present argument is without merit.  *See* August 23, 2019 letter (Exhibit 14 to SunTrust's Motion). Among other things, the August 23 letter states that SunTrust is "unable to provide the payoff

---

[8] Nor does the fact that SunTrust, in an abundance of caution, *did respond* on August 14, advising Plaintiff that additional time was required to provide a thorough response, provide any support for Plaintiff's after-the-fact complaints.  *See* Aug. 14, 2019 letter (Exhibit 13 to SunTrust's Motion).

[9] In fact, SunTrust was under no such obligation.  *See Mohamed v. Select Portfolio Servicing, Inc.*, 215 F.Supp.3d 85, 98–99 (D.D.C. 2016) ("As none of the information Plaintiff requested from Defendant—a payoff statement, a certified copy of the Note, the identity of the loan's owner, and an opportunity to physically inspect the Note—constituted information related to servicing, Plaintiff's QWR did not trigger the response requirements."); *Hudgins v. Seterus, Inc.*, 192 F.Supp.3d 1343, 1351 (S.D. Fla. 2016) (request for "a current pay off statement" did not concern servicing); *Tanasi v. CitiMortgage, Inc.*, 257 F. Supp. 3d 232, 264 (D. Conn. 2017) ("A payoff statement does not relate to a borrower's periodic payments and is not necessary for routine servicing, but rather for paying the loan in full. Such a request does not relate to "servicing" under RESPA."); *Weiss v. Wells Fargo Bank, N.A.*, 2020 WL 469615, at *3 (N.D. Ill. Jan. 29, 2020) ("Wells Fargo challenges request 3 of the third RFI, which requests a 'complete pay-off statement.' The Court agrees with Wells Fargo that 12 C.F.R. § 1024.36(a) specifically states that '[a] request for a payoff balance need not be treated by the servicer as a request for information.' 'The Weisses therefore may not argue that the failure to respond to request 3 of the third RFI constituted a violation of 12 C.F.R. § 1024.36.'").

statement or a reinstatement amount on this account as the figures would be considered invalid since the foreclosure sale was conducted August 20, 2019." *Id.*

The Opposition also tries to avoid dismissal by misstating SunTrust's arguments with respect to Plaintiff's purported August 18 letter. SunTrust's Motion states that it is "unable to locate any such correspondence in its records;" (Mot. at 12); that "the very existence of such a letter is itself doubtful," (*id.*); and that "[w]hat is also known *from the allegations in the [Amended] Complaint* is that Plaintiff's April 10 letter and her April 18 letter are identical…" (*id.* at 10). This third statement is based on the allegations of the Amended Complaint itself. *Compare* ECF No. 23 at ¶¶ 33-34 *with id.* ¶ 37 (alleging flaws in foreclosure proceedings and requesting payoff quote). Pertinent here, however, and as explained in SunTrust's Motion, the reason that no response was given to Plaintiff's purported August 18 letter is that *SunTrust did not receive any such letter.* Quite obviously, nothing in RESPA or its regulations requires a servicer to respond to a letter which it never received.[10]

Finally, Plaintiff's suggestion that this Court should disregard the exhibits attached to SunTrust's Motion—all of which are either referred to in or are integral to the allegations in the Complaint—is nothing but an attempt to excuse the blatant misstatements and mischaracterizations which plague Plaintiff's pleading. *Compare* Ex.'s 13 and 14 to SunTrust's Motion (responses to Plaintiff's letter dated August 10) *with* ECF No. 23 at ¶ 39 ("SunTrust never provided a written response to Ms. Garey's inquiries."). Contrary to the Opposition's suggestion, the exhibits to

---

[10] While the Opposition posits that the purported August 18 letter—the existence of which SunTrust disputes—was "not only mailed but faxed and received on August 18" (Opp. at 10, n. 5), the alleged fax is of no consequence. 12 C.F.R. § 1024.35(c) authorizes a servicer to designate a specific mailing address for all QWRs. *See, e.g., Peters v. Bank of Am., N.A.*, 2015 WL 1259417, at *1 (E.D. Va. Mar. 18, 2015). Because SunTrust did so, only letters sent to that mailing address may qualify as QWRs. *See Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1147 (10th Cir. 2013) (holding that letters denominated as QWRs, which were sent by mortgagor to mortgage servicer via fax rather than that designated by servicer did not trigger duties under RESPA, even where servicer responded to such letters).

SunTrust's motion are neither "arguments" nor "allegations" (Opp. at 9), but the very documents on which Plaintiff's claims are based.

Accordingly, Plaintiff's attempts to save her RESPA claim are without merit, and Count Nine should be dismissed.

### E.     The Opposition Fails to Demonstrate That the TILA Claim Is Properly Pled.

Plaintiff tries to defend the merits, *vel non*, of her TILA claims by asking this Court (1) to accept the Amended Complaint's conclusory allegations as plausible, and (2) to ignore facts which appear on the very documents which form the basis for Plaintiff's claim.  In doing so, however, Plaintiff fails to respond to the defects identified in SunTrust's Motion:

- Plaintiff argues that SunTrust's explanation of its compliance with 'dual tracking' regulations (Mot. at 12) is nothing but an "an excuse". (Opp. at 11).

    o That 'excuse', however, appears on Plaintiff's account statements themselves, and, therefore raises a question of law properly resolved on a motion to dismiss.

- Plaintiff argues that her failure to state *when* SunTrust allegedly did not send a monthly mortgage statement to her satisfies the requirements of Rule 8.  (Opp. at 11-12).

    o However, Plaintiff's allegations neither put SunTrust on notice of Plaintiff's claims, nor amount to anything more than "an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Strangely, Plaintiff is able to specifically allege that her "mortgage statement from *April 2019* did not indicate that foreclosure proceedings had begun," yet is unable to identify the particular month(s) that she claims SunTrust did not send her a mortgage statement.  *Compare* ECF No. 23 at ¶ 19 *with id.* at ¶ 20.

- Plaintiff argues that her failure to state *when* SunTrust allegedly did not respond to her payoff request satisfies the requirements of Rule 8.  Seeking to improperly amend her vague pleading through briefing, Plaintiff *now argues* that this claim was premised on her August 2019 payoff request.[11]  In support, Plaintiff cites to a section of the Code of Federal Regulations—12 C.F.R. § 1639(g)—that does not even exist.

    o Even assuming SunTrust were required to respond to the payoff request received on August 14, 2019, within seven days after receipt, it did so by letter dated August 23. (Exhibit 14 to SunTrust's Motion).

---

[11] Evasively, Plaintiff declines to state the specific date of that alleged request.

In short, Plaintiff's efforts to save and/or rehabilitate her TILA claim are entirely without merit, and Count Ten should be dismissed.

**F.     The Opposition Confirms the Individualized Nature of Plaintiff's Claims and Offers No Meaningful Response to Doubts Raised Regarding Counsel's Adequacy.**

Even if Plaintiff's individual claims in Counts One through Four somehow were to survive dismissal, the Opposition confirms several reasons why the class allegations should be stricken. First, as forecast in SunTrust's Motion, Plaintiff's Opposition fails to identify any facts in the Amended Complaint "which would tend to show (a) that any other person—much less a class— had an experience similar to hers, or (b) the size of that class of persons." (Mot. at 17). While the Opposition offers speculation that the size of SunTrust's business makes it "more than likely" that the bank "is foreclosing on 40 or more homes in the entire state of Maryland at any given time," (Opp. at 13), Plaintiff offers no facts to show how or why her experience—and, in particular, the exchange of correspondence between Plaintiff and SunTrust on which her claims are based—was representative of that of any other person.[12]

The Opposition fares no better with respect to typicality or commonality, offering only a garbled argument regarding Plaintiff's claim being based on the HUD-required notice that BWW mailed to Plaintiff.[13]  Again, to the extent Plaintiff now seeks to re-cast her claims, this is not only

---

[12] To the extent that Plaintiff seeks to amend her already Amended Complaint by introducing new allegations regarding an unspecified form notice, it is well settled that such amendment-through-argument is impermissible. *See, e.g., Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 748 (D. Md. 1997) (plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint."), *aff'd*, 141 F.3d 1162 (4th Cir. 1998).  Moreover, nowhere in the Amended Complaint does Plaintiff allege anything unlawful about the notice forms used by SunTrust; rather, her (mistaken) allegations are only that SunTrust sent the notice(s) at a time that it could not pursue foreclosure. *See, e.g.*, Am. Compl. ¶¶ 27-28.

[13] To the extent that Plaintiff concedes that her class claims are against BWW only, they should be dismissed and/or stricken as to SunTrust.  *See* Opp. at 15 ("The FAC clearly alleges that the class claim is based on the HUD-required Notice *that BWW mailed to Plaintiff.*") (emphasis added).

impermissible, *see Zachair*, but is also flatly inconsistent with the actually-pled allegations, which do not criticize the substance of that notice, but (mistakenly) quarrel over whether the notices were sent at a time that SunTrust could pursue foreclosure. Regardless, because the Amended Complaint fails to plead—and the Opposition fails to show—how Plaintiff's claims are typical of any other person's purported claims, or why her claims are not highly individualized, the putative class allegations should be stricken.

The Opposition next argues that the mere existence of individualized damages does not *per se* render the class unmanageable. (Opp. at 13-14). Notwithstanding the several, factually distinguishable cases cited by Plaintiff, this Court has recognized that MCDCA claims seeking to recover actual damages for emotional distress or mental anguish are not amenable to class treatment because such claims "would actually require class members to bring individual suits to prove causation and damages." *Murdoch v. Rosenberg & Assocs., LLC*, RWT 12- 2234, 2013 WL 1209144, at *9 (D. Md. Mar. 22, 2013) (denying class certification). Because Plaintiff seeks only actual damages under each putative class claim, including damages for "fear or worry of being kicked out of the Property," her effort to plead a class claim runs against well-reasoned precedent.[14]

Finally, and notwithstanding the attempts to rehabilitate Thomas Alston and his uncontested involvement in this case, the Opposition points to legal authority that confirms the inadequacy of Plaintiff's Counsel to represent a putative class. To the extent that putative class counsel must "demonstrate that he possesses the experience and skills to pursue the type of litigation involved," (Opp. at 16), Plaintiff's Counsel has failed to cite a single case in which he has prevailed on a class certification motion, much less been appointed class counsel. Moreover,

---

[14] Notably, nowhere in the Amended Complaint has Plaintiff stated what those purported actual damages are.

because "the court may consider the quality of the pleadings the firm submits," (*id.*), SunTrust posits that the Opposition's perpetuation of legally incorrect and flawed arguments in the face of recent, on-point authority further militates against Plaintiff's Counsel's adequacy. Nor can Counsel's admitted and repeated failure to abide by filing deadlines (ECF Nos. 36, 39, and 40) in any way support the adequacy requirement of Rule 23 of the Federal Rule of Civil Procedure.

Lastly, and despite the Opposition's attempt to second-guess Judge Copperthite's judgment,[15] the admitted involvement of Mr. Alston in this action undermines Plaintiff's Counsel's adequacy to represent a class.[16] In sum, the Opposition confirms the inadequacy of Plaintiff's Counsel to represent a putative class.

Accordingly, even if Counts One through Four were to survive dismsisal, the class allegations in the Amended Complaint should be stricken, and Plaintiff should be permitted to proceed on these claims on an individual basis only.

## CONCLUSION

For the foregoing reasons and for the reasons set forth in their opening Memorandum, Defendants SunTrust Mortgage, Inc. and SunTrust Bank respectfully request that their Consolidated Motion to Dismiss Class Action Complaint, or, in the Alternative, to Motion to Strike

---

[15] As noted in its opening memorandum, Judge Copperthite entered an order in *Miller v. Trident Asset Mgmt., LLC*, ADC-18-2538, 2019 WL 6528610 (D. Md. Dec. 4, 2019), awarding sanctions against Mr. Styles personally and his client based on the filing of fraudulent and frivolous claims in that action. On July 16, 2020, Judge Copperthite determined the amount of the sanctions to be paid and ordered Mr. Styles and his client to pay $26,591.91. *Id.* at ECF No. 184.

[16] As noted in SunTrust's Motion, the unsigned, August 10 letter on which Plaintiff claims are based appears to have been prepared and sent by Thomas Alston from his residential address in Maryland—not by Plaintiff and not from the offices of Mr. Styles in the District of Columbia, where it has been represented that Mr. Alston is employed as a paralegal. (Exhibit 12 to SunTrust's Motion). Though the letter appears to reflect the provision of legal services from an address in Maryland and regarding Maryland law, neither Mr. Alston nor Mr. Styles is a member of the Maryland Bar. Courts have denied class certification based on the inadequacy of counsel where the firm seeking appointment as class counsel employed a paralegal who engaged in the unlicensed practice of law. *See Walter v. Palisades Collection, LLC*, 2010 WL 308978, at *10 (E.D. Pa. Jan. 26, 2010).

Class Allegations be GRANTED, that the Class Action Complaint be DISMISSED WITH PREJUDICE, and that this Court AWARD SunTrust such further relief it deems appropriate. To the extent that Counts One through Four of the Amended Complaint survive the instant Motion to Dismiss, Defendants respectfully request that the class allegations be STRICKEN and that this case be permitted to proceed on an individual basis *only*.

Respectfully submitted,

*/s/ Brian L. Moffet*
Brian L. Moffet
Michael B. Brown
MILES & STOCKBRIDGE P.C.
100 Light Street
Baltimore, MD 21202
410.727.6464
bmoffet@milesstockbridge.com
mbbrown@milesstockbridge.com

*/s/ Matthew A. Egeli*
Matthew A. Egeli
EGELI LAW FIRM, PLLC
108 D MacTanly Place, P.O. Box 3208
Staunton, VA 24402-3208
540.569.2690
matthew@egelilaw.com

*Counsel for SunTrust Mortgage, Inc.*
*and SunTrust Bank*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 22, 2020, a copy of the foregoing was served on all counsel of record via this Court's CM/ECF system.

*/s/ Brian L. Moffet*
Brian L. Moffet