## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### *Southern Division*

|  |  |  |
|---|---|---|
|  | * |  |
| **MONICA GAREY,** | * |  |
| *Plaintiff,* |  |  |
|  | * |  |
|  |  | **Case No.: 8:19-cv-03112-PWG** |
| **v.** | * |  |
|  |  |  |
| **BWW LAW GROUP, LLC, ET AL.** | * |  |
| *Defendants.* |  |  |
|  | * |  |

\*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*

## MEMORANDUM OPINION AND ORDER

Monica Garey purchased the real property located at 3052 Esser Place, Waldorf, Maryland (the "Property") as her personal residence on March 29, 2015. ECF 56, Second Amended Complaint ("SAC") ¶ 13. To fund that purchase, Ms. Garey obtained a mortgage loan. *Id.* Ms. Garey defaulted on her payment obligations under the mortgage loan, and a foreclosure action was initiated against her in the Circuit Court for Charles County, *Carrie Ward, et al. v. Monica Garey,* Case No. C-08-CV-18-001196 (Cir. Ct. Charles County) (the "Foreclosure Action").[1] *Id.* ¶¶ 15, 24. Ms. Garey's property was sold in a foreclosure sale on August 20, 2019, *id.* ¶ 50, and the Circuit Court ratified the sale two months later. *See* Foreclosure Action Docket.

Ms. Garey filed suit in this Court on October 25, 2019. ECF 1, Compl. Her SAC, filed October 27, 2020, asserts five causes of action against Defendant BWW Law Group (acting on behalf of the substitute trustees) ("BWW"), and nine causes of action against SunTrust Mortgage,

---

[1]     The docket in the Foreclosure Action, of which I take judicial notice pursuant to Fed. R. Evid. 201(b), will be cited herein as the "Foreclosure Action Docket." The Foreclosure Action Docket is available via Maryland Case Search at https://casesearch.courts.state.md.us/casesearch/

Inc., and SunTrust Bank (collectively, "SunTrust").[2; 3] *See generally* SAC. The causes of action against BWW and SunTrust variously assert individual and class claims for violations of state and federal consumer protection and debt collection statutes, which Ms. Garey alleges BWW and SunTrust violated in the course of foreclosing on the Property. *Id.*

Currently pending are BWW's and SunTrust's respective motions to dismiss the SAC, or, in the alternative to strike the class allegations in the SAC. I have reviewed the relevant filings[4] and determined that no hearing is necessary. *See* Loc. R. 105.6. For the reasons explained below, BWW's MTD is granted, SunTrust's MTD is granted in part and denied in part, and both Defendants' Motions to Strike the Class Allegations in the SAC are denied as moot.

## FACTUAL AND PROCEDURAL BACKGROUND

Ms. Garey secured her mortgage loan from First Home Mortgage Company on May 15, 2019. SAC ¶ 13. As part of the process for securing the loan, Ms. Garey executed a promissory note ("Note") and deed of trust ("DOT") on May 29, 2015. SAC ¶ 13. "Ms. Garey's loan was insured by the Federal Housing Administration ('FHA')." *Id.* ¶ 14. Accordingly, Ms. Garey alleges

---

[2]    SunTrust Bank is a successor by corporate merger to Truist Bank, a Defendant. ECF 22, SunTrust's Amended Local Rule 103.3 Corporate Disclosure Statement. The SAC contains no allegations against Truist Bank that are separate from those against SunTrust. *See generally* SAC. Accordingly, for the reasons explained in this Opinion, all claims against Truist Bank are dismissed to the same extent as the claims against SunTrust.

[3]    The SAC also asserts causes of action against the Navy Federal Credit Union and various debt collectors. *See* SAC ¶¶ 6–12, 79–91, 137–161. Those causes of action are beyond the scope of this Opinion.

[4]    SunTrust MTD; ECF 82, BWW's MTD Plaintiff's Second Amended Complaint ("BWW MTD") ; ECF 85, Plaintiff's Opposition to the Defendants' Motions to Dismiss Second Amended Class Action Complaint ("Opp."); ECF 87, SunTrust's Reply in Further Support of SunTrust's MTD ("SunTrust Reply"); ECF 88, BWW's Reply in Further Support of BWW's MTD ("BWW Reply").

that the Note and Deed of Trust incorporated additional provisions and protections pursuant to FHA and HUD[5] regulations. *Id*.

Ms. Garey unfortunately lost her job and was unable to keep up with her loan payment obligations. *Id*. ¶ 15. From October 25, 2016, and until BWW filed the Foreclosure Action on December 12, 2018, SunTrust sent Ms. Garey a series of communications regarding the status of her loan and the possibility that the Property would be foreclosed on if the loan remained in default. *Id*. ¶¶16–23. Those communications allegedly included:

- A letter dated October 25, 2016, which "represented that foreclosure proceedings had commenced." *Id*. ¶ 16

- A letter dated August 21, 2017, which "misrepresented that [SunTrust] had a right to conduct a foreclosure sale of the Property." *Id*. ¶ 18.

- A communication in April 2018 in which SunTrust stated that Ms. Garey would have to pay $44,721.58 to reinstate the loan. *Id*. at 19.

- A letter dated May 11, 2018, in which SunTrust "indicated that no foreclosure action" had yet been filed against her or the Property. *Id*. ¶ 20.

- A letter dated June 5, 2018, in which SunTrust "claimed and/or threatened a foreclosure sale could occur soon after June 25, 2018. *Id*. ¶ 21.

- A communication dated October 25, 2018, identified as a "Notice of Intent to Foreclose" that "threatened a foreclosure action could be filed in 45 days and that the cure amount was $52,778.43." *Id*. ¶ 23.

BWW, on behalf of the substitute trustees, filed the Foreclosure Action on December 12, 2018. SAC ¶ 24. Ms. Garey was not personally served in the Foreclosure Action. *Id*. ¶ 26. A private process server's affidavit[6] that was filed in the Foreclosure Action indicates that after two good faith attempts at personal service had failed, he posted a copy of the Summons and Complaint on Ms. Garey's front door. ECF 79-2, Process Server Affidavit. Additionally, "service was completed

---

[5]     Department of Housing and Urban Development.
[6]     Ms. Garey disputes that the papers were posted on her front door. Pl. Opp. at 3 n. 2.

by mailing true copies of" the Summons and Complaint "via first class mail postage prepaid and by certified mail return receipt requested[.]" *Id.* at 2. Notwithstanding the communications listed above, Ms. Garey alleges that she "did not become aware of the foreclosure action until she received notice that the property was going to be sold at a foreclosure sale." SAC ¶ 26.

In April 2019, SunTrust represented that the amount due to reinstate the loan was $63,704.02, a figure Ms. Garey alleges was "inflated by at least $3,000." *Id.* ¶ 27. The April 2019 statement also "did not indicate that foreclosure proceedings had begun on the loan." *Id.* ¶ 28. Ms. Garey alleges that SunTrust "did not send mortgage statements each month and therefore, Ms. Garey was not apprised of the status of her mortgage for several months in 2019, including but not limited to May, June, July and August." *Id.* ¶ 29.

On June 19, 2019, Ms. Garey received a letter from BWW entitled "NOTICE TO OCCUPANTS OF PENDING ACQUISITION." *Id.* ¶ 33. The letter reads, in pertinent part:

> In the near future, the property located at 3052 Esser Place, Waldorf, MD 20603 may be sold at a foreclosure sale auction pursuant to the terms of a mortgage or deed of trust. We expect that ownership of the property may be transferred to SunTrust Bank within the next 60 to 90 days as a result of the foreclosure sale. Sometime thereafter, ownership of the property will probably be transferred to the Secretary of Housing and Urban Development ("HUD").

*Id.*

On or about July 31, 2019, BWW sent Ms. Garey a Notice of Impending Foreclosure. SAC ¶ 44. On August 20, 2019, the Property was sold to the Defendants at a foreclosure sale. *Id.* ¶ 50.

Ms. Garey filed this action on October 25, 2019. Compl. In it, Ms. Garey seeks recovery for the damages allegedly caused by BWW's and SunTrust's actions during the foreclosure process which, she contends, violated the Truth In Lending Act, 15 U.S.C. § 1601 et seq. ("TILA"); the Federal Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"); the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605 et seq. ("RESPA"); the Fair Credit Reporting Act,

15 U.S.C. § 1681 et seq. ("FCRA"); the Maryland Consumer Debt Collection Act, Md. Code, Comm. Law § 14-201 et seq. ("MCDCA"); the Maryland Consumer Protection Act, Md. Code, Comm. Law 13-101 et seq. ("MCPA"); and the Maryland Mortgage Fraud Protection Act, Md. Code, Comm. Law § 7-401 et seq. ("MMFPA").

SunTrust and BWW both move to dismiss the SAC in its entirety under Fed. R. Civ. P. 12(b)(6), asserting that Ms. Garey's claims against them are precluded by the Foreclosure Action. They argue alternatively that Ms. Garey has failed to plead her MCDCA, MCPA, MMFPA, and FDCPA claims with particularity, and that she has failed to state a plausible claim for relief under RESPA, TILA, and FCRA. The Defendants also move to strike Ms. Garey's class allegations under Fed. R. Civ. P. 23.

Additional facts will be provided below as needed.

## STANDARD OF REVIEW

Fed. R. Civ. P. 12(b)(6) provides that a complaint must be dismissed if it "fails to state a claim upon which relief can be granted." The purpose of the rule is to test the sufficiency of the complaint, not to address its merits. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). To survive a motion to dismiss under Rule 12(b)(6), the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). The claim for relief must be plausible, and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678–79.

All claims rooted in fraud allegations are subject to a heightened pleading standard under Fed. R. Civ. P. 9(b). Rule 9(b) states that "in alleging a fraud or mistake, a party must state with particularity the circumstances constituting the fraud or mistake." Fed. R. Civ. P. 9(b). Such

allegations of fraud typically include the "time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what [was] obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).

When reviewing a motion to dismiss, the Court must accept the well pleaded facts in the operative complaint (here, the SAC), and also may "consider documents attached to the complaint, as well as documents attached to the motion to dismiss, if they are integral to the complaint and their authenticity is not disputed." *Sposato v. First Mariner Bank*, No. CCB-12-1569, 2013 WL 1308582, at *2 (D. Md. Mar. 28, 2013) (citing *Philips v. Pitt County Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)). And where the allegations of the complaint conflict with an attached written instrument, "the exhibit prevails." *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991). If the Court considers matters outside the pleadings, it must treat the motion as a motion for summary judgment. Fed. R. Civ. P. 12(d). However, a court may take judicial notice of matters of public record without converting a motion to dismiss into motion for summary judge. *Secretary of State For Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (citing *Hall v. Virginia*, 385 F.3d 421, 424 (4th Cir. 2004)).

## DISCUSSION

### I.   <u>Res judicata</u>

The Defendants both argue that the SAC is barred in its entirety by the underlying Foreclosure Action under the doctrine of res judicata.

Res judicata "bars a party from suing on a claim that has already been litigated to a final judgment by that party or such party's privies and precludes the assertion by such parties of any legal theory, cause of action, or defense which could have been asserted in that action." *Reid v. New Century Mortg. Corp.*, No. AW-12-2083, 2012 WL 6562887, at *3 (D. Md. Dec. 13, 2012)

(quoting *Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 210 (4th Cir. 2009)) (citations omitted). When federal court litigants claim that a state court judgment has preclusive effect, "[the] federal court must give to [the] state court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984).

A. *Res judicata is applicable in this action*

Ms. Garey argues that res judicata is inapplicable to her claims against BWW and SunTrust because "a foreclosure action is ordinarily a summary, *in rem* proceeding," which "would normally have no *in personam* effect on a mortgagor's subsequent claim." Opp. at 2 (quoting *Jones Bank v. HSBC Bank USA, N.A.*, 444 Fed. Appx. 640, 644 (4th Cir. 2011)).[7] She reasons that it "is only when a mortgagor voluntarily appears and raises objections that the action results in an *in personam* judgment with preclusive effect." *Id.* Ms. Garey is mistaken. .

Although Maryland law historically has allowed for summary *in rem* foreclosure proceedings, the procedural rules surrounding foreclosure actions more recently have changed to provide homeowners with more notice and greater opportunities to challenge the foreclosure. *See Arrington v. Ocwen Loan Servicing, LLC*, 2019 WL 7190500, at *6 (Md. Ct. Spec. App. Dec. 26, 2019) (describing the "significant" changes to the procedural requirements to obtaining foreclosure.). The present rules governing foreclosure proceedings require "the plaintiff [to] serve on the borrower and the record owner a copy of all papers filed to commence the action[.]" Md. Rule 14-209. Both Maryland Rule 14-209, which outlines the requirements for service in actions

---

[7]     Ms. Garey also claims that "in situations where the plaintiff was a defendant in a prior resolved action, the subsequent suit is not barred by the judgment in the prior action if the plaintiff is merely seeking monetary damages in the subsequent suit." Opp. at 3. For this rather astonishing proposition, Ms. Garey cites *Currie v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 788, 801–02 (D. Md. 2013), but it contains no such statement.

to foreclose on residential property, and Maryland Code, Real Property Article § 7-105.1, which governs the procedure for "[s]ales upon default; foreclosure procedures" provide for service by personal delivery to the mortgagor, or leaving the required papers with a "resident of suitable age and discretion" at the mortgagor's dwelling. Both statutes further provide that if two good faith efforts at personal service on different days have failed, the plaintiff may effect service by mailing the required documents to the mortgagor by certified and first class mail and conspicuously posting a copy of the required documents on the subject property. *See* Md. Rule 14-209(b); Md. Code, § 7-105.1(h)(5) of the Real Property Article.

In addition to the enhanced notice requirements in the amended rules, "a debtor who owns property subject to a lien created by a lien instrument [now] possesses three means of challenging a foreclosure." *Jones v. Rosenberg*, 940 A.2d 1109, 1115 (2008)(quoting *Wells Fargo Home Mortgage, Inc. v. Neal*, 398 Md. 705, 726, 922 A.2d 538 (2007) (citations omitted)). They are: (1) "obtaining a pre-sale injunction pursuant to Maryland Rule 14–209(b)(1), [(2)] filing post-sale exceptions to the ratification of the sale under Maryland Rule 14–305(d), and [(3)] the filing of post-sale ratification exceptions to the auditor's statement of account pursuant to Maryland Rule 2–543(g),(h)." *Id.*

Ms. Garey does not dispute that the plaintiffs in the Foreclosure Action made two attempts at personal service and mailed the necessary paperwork as required. Opp. at 3 n. 2. She does "dispute[] that the papers were posted on her door," but does not challenge the authenticity of the affidavit of service that was filed in the Foreclosure Action, which affirms that the papers were conspicuously posted on the Property, and which was accepted by the Maryland Circuit Court. *See Id.*; Affidavit of Process Server. To the extent that Ms. Garey's allegations conflict with the affidavit, the affidavit prevails.

SunTrust sent Ms. Garey a Notice of Intent to Foreclose on October 25, 2018, and filed the Foreclosure Action on December 12, 2018. SAC ¶¶ 23–24. The SAC does not identify a specific date on which Ms. Garey first became aware of the Foreclosure Action, *see id.* ¶¶ 23–33, but Ms. Garey acknowledges that SunTrust sent a "Notice to Occupants of Pending Acquisition" on June 19, 2019, two months in advance of the sale. *Id.* ¶ 33.[8] After becoming aware of the Foreclosure Action, Ms. Garey communicated with SunTrust multiple times and requested that the sale be cancelled but neglected to take any action in the Foreclosure Action itself.

In short, Ms. Garey had notice and opportunity to contest the foreclosure in the underlying Foreclosure Action but failed to do so. *See Cooke v. Caliber Home Loans, Inc*., No. 18-3701-PWG, 2020 WL 1434105, at *6 (D. Md. Mar. 24, 2020). "The state can do no more than give the litigant 'a day in court'; if he does not utilize it but suffers the decision to go against him by default, he is as conclusively and finally bound by it, as though he had actively contested it." *Manigan v. Burson*, 160 Md. App. 114, 120, 862 A.2d 1037, 1041 (2004) (quoting *Moss v. Annapolis Sav. Inst.,* 177 Md. 135, 143, 8 A.2d 881, 884 (1939)). To now allow Ms. Garey "to claim damages stemming from the ratification of the foreclosure sale which she failed to contest would permit her impermissibly to attack a final judgment of the Circuit Court." *Coleman v. Countrywide Home Loans, Inc.*, Civil Case No. L–10–2297, 2010 WL 5055788, at *4 (D. Md. Dec. 3, 2010).

B.  *Counts Five and Seven of the SAC are barred by res judicata.*

Under Maryland law, res judicata provides grounds for dismissal if a defendant establishes that "(1) the present parties are the same or in privity with the parties to the earlier dispute, (2) the claim presented is identical to the one determined in the prior adjudication, and (3) there has been

---

[8]     Assuming for a moment that the allegations of the SAC are in chronological order, Ms. Garey was in fact aware of the Foreclosure Action in or before April 2019, four months in advance of the sale. *Id.*

a final judgment on the merits." *Capel v. Countrywide Home Loans, Inc.*, No. WDQ-09-2374, 2010 WL 457534, at *3 (D. Md. Feb. 3, 2010) (citing *Anne Arundel County Bd. of Educ. v. Norville,* 887 A.2d 1029, 1037 (Md. 2005)). When considering a res judicata defense, courts may take judicial notice "of facts from a prior judicial proceeding when the *res judicata* defense raises no disputed issue of fact." *Q Int'l Courier Inc. v. Smoak*, 441 F.3d 214, 216 (4th Cir. 2006).

There is no dispute that the parties in this action are the same/in privity with those in the underlying Foreclosure Action. And although Ms. Garey makes some conclusory statements that "the foreclosure was illegal" and that it "never should have happened," she makes no meaningful argument to dispute the well-established principle of Maryland law that the ratification of the sale in a foreclosure action constitutes a final judgment on the merits. *See, e.g., Gordon v. Nationstar Mortgage LLC*, No. CIV. RWT 14-1361, 2015 WL 5165453, at *1 n.6 (D. Md. Sept. 2, 2015). What remains, then, is to determine whether the claims presented in this action are identical to that in the Foreclosure Action.

Maryland courts determine whether a claim is "identical" for res judicata purposes by applying the "transaction test." Under the transaction test, "a 'claim' includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction. . . out of which the claim arose. . . . Because a 'claim' encompasses all rights the plaintiff has to remedies against the defendant respecting all or any part of the transaction… out of which the claim arises, the doctrine of *res judicata* bars subsequent litigation not only of what was decided in the original litigation of the claim but also of what *could have been decided* in that original litigation." *Boyd v. Bowen*, 806 A.2d 314, 325–26 (2002).

However, "not all claims raised in a subsequent suit that arise out of the same transaction or series of transactions at issue in a prior suit are barred." *Currie*, 950 F. Supp. 2d at 801. In

*Rowland v. Harrison*, 577 A.2d 51, 57 (Md. 1990), the Court of Appeals of Maryland explained that "where the same facts may be asserted as either a defense or a counterclaim, and the issue raised by the defense is not litigated and determined so as to be precluded by collateral estoppel, the defendant in the previous action is not barred by res judicata from subsequently maintaining an action on the counterclaim." In the foreclosure context, a subsequent action that alleges violations of consumer protection and debt collection statutes is not necessarily an impermissible collateral attack on the underlying judgment of foreclosure. *See Mostofi v. Midland Funding, LLC*, 117 A.3d 639, 648 (Md. Ct. App. 2015).

The Defendants paint with too broad a brush when they argue that *all* of Ms. Garey's claims are barred by res judicata. Most of the causes of action in the SAC do not attack the judgment in the Foreclosure Action, but instead allege that SunTrust and BWW violated protective statutes in the course of the foreclosure that caused injury separate and apart from the foreclosure itself. *See generally* SAC. Counts Five and Seven of the SAC, however, *do* directly attack the judgment in the Foreclosure Action and are therefore barred by *res judicata*.

Count Five, an individual claim against BWW, asserts that BWW violated the FDCPA "by misrepresenting the amount, character and legal status of the debt" and by "threatening and conducting a foreclosure sale when [BWW] had no right to conduct a foreclosure sale."[9] SAC ¶¶ 74; 76. Similarly, Count Seven, an individual claim against both SunTrust and BWW, asserts that the Defendants violated MCDCA by "claiming a right and/or attempting to collect a debt in amounts in excess of the true amount owed," and by "conducting the foreclosure sale without

---

[9]     Count Five also alleges that BWW violated the FDCPA by "falsely representing that foreclosure proceedings had begun and/or that that it could conduct a foreclosure sale before any foreclosure action had been filed." SAC ¶ 75. This specific allegation, although not barred by res judicata, is nevertheless meritless for the reasons explained in Section II, below.

complying with Maryland foreclosure law's requirement to provide a timely cure amount and to send the borrower a final loss mitigation affidavit." SAC ¶¶ 93–94.

Counts Five and Seven relate to the same transaction as the underlying Foreclosure Action and fundamentally challenge the Circuit Court's judgment by disputing the legality of the proceeding and the amount of the debt owed. *Id.* ¶¶ 73–78; 92–98. Ms. Garey's claim that the foreclosure was conducted illegally and based on misrepresentations of the amount owed on her mortgage loan is a belated attempt to raise defenses that could have and should have been raised in the Foreclosure Action, and amounts to a challenge of the ultimate issue decided by the judgment in that case.

Accordingly, Counts Five and Seven are dismissed with prejudice.

## II.    Remaining Claims Against BWW

Counts One, Two and Three[10] of the SAC allege that BWW sent Ms. Garey "illegal communications" that violated the FDCPA, the MCDCA, and the MCPA, respectively. SAC ¶¶ 58–68. The SAC specifically alleges that the communications illegally claimed BWW "could or threatening to obtain title to the property and evict the Plaintiff and the putative members of the Classes during a time period that Defendants knew they had no right to obtain title to the properties." SAC ¶¶ 59; 63; 66. I disagree.

The SAC alleges only two instances of BWW communicating with Ms. Garey directly. *First*, on "June 19, 2019, BWW sent Ms. Gary a letter with the titular NOTICE TO OCCUPANTS OF PENDING ACQUISITION," which informed Ms. Garey that:

---

[10]    The SAC asserts Counts Two and Three against "All Defendants," SAC ¶¶ 62–68, but the SAC also states that the only factual allegations against the Defendants other than SunTrust and BWW are provided in Counts Six and Twelve. *Id.* at 3, n. 1. Because Counts Two and Three contain no factual allegations that would support a claim against the other Defendants, I construe them as asserted solely against SunTrust and BWW.

> In the near future, the [Property] may be sold at a foreclosure sale or auction pursuant to the terms of a mortgage or deed of trust. We expect that ownership of the property may be transferred to SunTrust Bank within the next 60 to 90 days as a result of the foreclosure sale. Sometime thereafter, ownership of the property will probably be transferred to the Secretary of Housing and Urban Development ("HUD").

SAC ¶ 33. This Notice of Pending Acquisition ("NOPA") also stated that "HUD generally requires that there be no one living in properties conveyed to the Secretary as a result of a foreclosure," and informed Ms. Garey of the steps she could take to get permission to remain in her home after title transferred to the HUD Secretary. ECF 82-3, NOPA. *Second*, on "or about July 31, 2019, BWW sent Ms. Garey a Notice of Impending Foreclosure Sale that threatened to sell the Property on August 20, 2019." *Id.* ¶ 44.

Because the Property was, in fact, sold at the foreclosure sale on August 20, 2019, and because Ms. Garey is precluded from raising any issue regarding the propriety of that sale, *see* Section I.B., above, I assess Ms. Garey's remaining claims against BWW through the lens of the July 19, 2019 NOPA.[11]

### A. FDCPA

The FDCPA bars "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692(e). As relevant here, the FDCPA prohibits the "representation or implication that nonpayment of any debt will result in . . . sale of any property. . . unless such action is lawful and the debt collector or creditor intends to take such action," as well as the "threat to take any action that cannot legally be taken or that is not intended to be taken." *Id.* § 1692e(4)–(5). In the subsequent section, the FDCPA forbids a debt collector

---

[11]     Because the NOPA is integral to Ms. Garey's SAC and she does not challenge its authenticity, the NOPA is appropriate for my consideration.

from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Ms. Garey alleges that BWW violated both sections. SAC ¶ 59.

The "threshold requirement for application of the FDCPA is that prohibited practices are used in an attempt to collect a debt." *Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719, 725 (D. Md. 2011) (quoting *Mabe v. G.C. Servs. Ltd. P'ship,* 32 F.3d 86, 87–88 (4th Cir.1994)). That standard is broad, and "to be actionable under [the] provisions of the Fair Debt Collection Practices Act, a debt collector needs only to have used a prohibited practice *in connection with* the collection of any debt or in an attempt to collect any debt." *Powell v. Palisades Acquisition XVI*, LLC, 782 F.3d 119, 120 (4th Cir. 2014) (emphasis added).

Although the NOPA makes no express demand for payment, it is a communication between a debt collector (BWW) and debtor (Ms. Garey) that references and provides instructions regarding ongoing foreclosure proceedings. NOPA. Ms. Garey unsurprisingly could have interpreted the NOPA as a communication made in an attempt to collect a debt, especially given the disclaimer that appears on each page of the letter, which provides "**THIS COMMUNICATION IS FROM A DEBT COLLECTOR. THIS MAY BE DEEMED AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE.**" *Id*. (emphasis in original). In any event, the NOPA is certainly a communication that was made "in connection with" the collection of a debt and is therefore subject to the FDCPA.

Ms. Garey claims that the NOPA violated the FDCPA because it indicated that "ownership of the property may be transferred to SunTrust Bank within the next 60 to 90 days as a result of the foreclosure sale," when in fact BWW knew that it would take longer than that to conduct a foreclosure sale and to have it ratified in the Circuit Court. Opp. at 5. In other words, Ms. Garey alleges that BWW should have waited until *after* the foreclosure sale to inform her that "ownership

of the property may be transferred to SunTrust Bank within" 60 to 90 days because BWW knew

that it would in fact take 120 days from the NOPA for the Circuit Court to ratify the sale and

finalize the transfer of title to SunTrust. Opp. at 5. In support of this argument, Ms. Garey cites a

string of authority which, she claims, stands for the proposition that BWW prematurely asserted a

right in violation of the FDCPA. But the cases Ms. Garey cites are distinguishable.

Under Maryland law, a "foreclosure sale of residential property may not occur until . . . at

least 45 days after service of process[.]" Md. Code, § 7-105.1(n) of the Real Property Article. In

each[12] of the cases Ms. Garey cites, the debt collector asserted a right to foreclose on residential

property before 45 days had elapsed since service of process in direct violation of Maryland

statute—the defendants in those cases did not yet have the right to foreclose on residential property

as a matter of law. *See Best v. Fannie Mae*, 450 F. Supp. 3d 606, 629 (D. Md. 2020); *Cooke v.

Carrington Mortg. Servs.*, Civil Action No. TDC-18-0205, 2019 WL 3241128, at *3 (D. Md. July

17, 2019); *Cezair v. JPMorgan Chase Bank, N.A.*, Civil Action No. DKC 13-2928, 2014 WL

4295048, at *9 (D. Md. Aug. 29, 2014).

Here, conversely, there is no meaningful dispute that BWW had the right to proceed with

the foreclosure sale. Furthermore, the NOPA does not contain any "false, deceptive, or misleading

representation or means in connection with the collection of any debt," and BWW does not

wrongly represent or imply "that nonpayment of any debt will result in . . . sale of any property. .

. unless such action is lawful and the debt collector or creditor intends to take such action." 15

U.S.C. § 1692(e). The NOPA also does not contain any "threat to take any action that cannot

---

[12]     Ms. Garey also cites *Estate of Morgan v. BWW Law Grp., LLC*, Civil Action No. CBD-
18-170, 2019 WL 2880984, at *3 (D. Md. July 2, 2019), in which this Court declined to dismiss
an FDCPA claim based on plausible allegations that the cure amount provided by defendant was
dramatically inflated.

legally be taken or that is not intended to be taken," *id.* and it does not constitute an "unfair or unconscionable means to collect or attempt to collect any debt." *Id.* § 1692(f). To the contrary, the NOPA informed Ms. Garey of actions it was legally permitted to take, that it intended to take, and that it ultimately did take. And the fact that the Circuit Court did not ratify the foreclosure sale until October 18, 2019 does not render BWW's actions a violation of the FDCPA.

Because Ms. Garey fails to state a plausible claim under the FDCPA, Count One of the SAC is dismissed. And because amendment would be futile, it is dismissed with prejudice.

## B. MDCPA

The Maryland Consumer Debt Collection Act similarly bars a debt collector from "claim[ing], attempt[ing], or threaten[ing] to enforce a right with knowledge that the right does not exist." Md. Code § 14–202 of the Commercial Law Article. Ms. Garey alleges that BWW violated this provision of the MCDCA for the same reasons she claims it violated the FDCA, and her claim fails for the same reasons. BWW did not claim a right that it did not possess in the NOPA—it claimed a right that *did* possess, and the fact that the final transfer of ownership occurred later than the NOPA anticipated does not change that analysis.

Accordingly, Count Two of the SAC is dismissed with prejudice as to BWW.

## C. MCPA

Finally, Ms. Garey alleges that BWW violated the MCPA, a statute which "prohibits 'unfair or deceptive trade practices,' Md. Code Ann., Com. Law § 13-301, and expressly designates as 'unfair or deceptive trade practices' those that constitute any violation of the MCDCA." *Best v. Fannie Mae*, 450 F. Supp. 3d 606, 636 (D. Md. 2020); *Hawkins v. Kilberg*, 165 F. Supp. 3d 386, 390 (D. Md. 2016) (noting that "a violation of the MCDCA is a per se violation of the MCPA").

Ms. Garey's sole allegations regarding BWW's alleged violation of the MCPA is that "Defendants violated the Md. Code Ann., Com Law §13-301(13)(iii) when the Defendants violated the MCDCA at §§ 14-202(8)." SAC ¶ 66. Because I have concluded that BWW did not violate the MCDCA, Count Three of the SAC is likewise dismissed with prejudice as to BWW.

## III.    **Remaining Claims Against SunTrust**

### A.   *"Class Claims" under the MDCDA, MCPA, and MMFPA*

Counts Two, Three, and Four of the SAC are "Class Claims" that allege that SunTrust violated the MCDCA, MCPA, and MMFPA, SAC ¶¶ 62–73, by claiming they "could or threatening to obtain title to the property and evict the Plaintiff and the putative members of the Classes during a time period that Defendants knew that had no right to obtain title to the properties." SAC ¶ 63.[13] All three purported statutory violations arise out of SunTrust's alleged failure to conduct a face-to-face interview with Ms. Garey prior to filing a foreclosure action, which Ms. Garey characterizes as a "key protection" of an FHA loan. *Id.* ¶ 14. Ms. Garey reasons that because SunTrust did not conduct the requisite face-to-face meeting, that its representations that it could foreclose on the Property violated the statutes.[14] *Id.*

The face-to-face meeting requirement comes from a HUD regulation, 24 C.F.R. § 203.604(b), which requires a mortgage lender to have:

> a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid. If default occurs in a repayment plan arranged other than during a personal

---

[13]    Count Four alleges SunTrust "committed Mortgage Fraud and violated" the MMFPA by "knowingly making . . . deliberate misstatements and misrepresentations, including threatening to acquire title and evict the Plaintiff and the members of the putative members of the class during a time period well in-advance of the actual time that Defendants could obtain title and evict Plaintiff and the class[] members." SEC ¶ 70.

[14]    The parties dispute the appropriate pleading standard for Ms. Garey's MCDCA and MCPA class claims, which turns on whether those claims "sound in fraud." Because Ms. Garey's claims are dismissed with prejudice on different grounds, I do not reach this issue.

interview, the mortgagee must have a face-to-face meeting with the mortgagor, or make a reasonable attempt to arrange such a meeting within 30 days after such default and at least 30 days before foreclosure is commenced.

In *Wells Fargo v. Neal*, 922 A.2d 538, 547 (Md. 2007), the Maryland Court of Appeals addressed whether a mortgagee's failure to comply with HUD's face-to-face meeting requirement gave rise to a private right of action for breach of contract. The Court analyzed the requirement in the context HUD's overall regulatory scheme and concluded that the failure to comply with the face-to-face requirement does not give rise to a private right of action:

> [T]he question here is whether the mortgagor may recover damages for breach of a certain provision of the deed in a private cause of action. The answer to that question lies within the HUD regulations themselves. Section 203.500 of Title 24 of the Code of Federal Regulations provides that noncompliance with the FHA mortgage servicing regulations empowers the Secretary of HUD to impose a "civil money penalty, including a penalty under § 30.35(c)(2), or withdrawal of HUD's approval of a mortgagee." **This enforcement scheme comports with the notion that the regulations enacted pursuant to the NHA were intended to govern the relationship between the mortgagee and the government rather than, as Neal would have it, the mortgagee and the mortgagor**.

> The overall purpose of the FHA mortgage insurance program is to encourage leading lenders, in exchange for a government guarantee of the loan, to extend mortgages to those carrying higher credit risks. The regulations setting forth the rules and procedures for the program, including the loss mitigation regulations pointed to by Neal and alluded to in paragraph 9(d) of the deed, address how participating lenders are to conduct their activities. **Thus, the regulations do not control directly the relationship between the mortgagor and mortgagee and may not be invoked by the mortgagor as a sword in an offensive cause of action against the mortgagee.**

*Id.* at 546.

The Maryland Court of Appeals also concluded in *Neal* that, although "a mortgagor may not wield as a sword the HUD regulations alluded to in a mandatory FHA form deed of trust," they may "assert an allegation of regulatory noncompliance as a shield against unauthorized foreclosure actions." *Id.* at 547.

18

There is no reason to differentiate Ms. Garey's present claims for statutory violations from the plaintiff's breach of contract claim in *Neal*. Ms. Garey's opportunity to appropriately assert that SunTrust's failure to conduct a face-to-face meeting defeated its right to foreclose on the Property was as a defense in the Foreclosure Action, not (after failing to assert such a defense during the foreclosure) as an affirmative claim in this subsequent proceeding under the guise of a federal statutory violation. *See also Cooke v. Caliber Home Loans, Inc.*, No. 18-3701-PWG, 2020 WL 1434105, at *7 (D. Md. Mar. 24, 2020) (holding the mortgagor's claim for an FDCA violation arising out of the mortgagee's failure to conduct a face-to-face meeting was barred by *res judicata*.).

For the reasons explained above, Counts Two, Three, and Four of the SAC are dismissed. And because amendment would be futile, they are dismissed with prejudice.

### B.  Individual MCPA and MMFPA claims against SunTrust (Counts Eight and Nine)

Ms. Garey asserts individual MCPA and MMFPA claims against SunTrust on the basis that SunTrust allegedly represented that Ms. Garey "could seek a shortsale without disclosing that SunTrust would not accept a reasonable offer." SAC ¶ 101. Ms. Garey alleges that SunTrust "omitted that it did not intend to process Plaintiff's shortsale request in good faith," and that its purported omission violated the MCPA and MMFPA and proximately caused actual damages to Ms. Garey. *Id.* ¶¶ 102, 109–10.

Ms. Garey's individual MMFPA claim against SunTrust (Count Nine) is subject to Rule 9(b)'s heightened pleading standard and must be pleaded with particularity to survive a motion to dismiss. *Gillis v. Household Fin. Corp. III*, No. GJH-18-3923, 2019 WL 3412621, at *10 (D. Md. July 29, 2019). SunTrust argues that Ms. Garey's SAC does not meet that standard.

The parties dispute whether the same heightened pleading standard applies to Ms. Garey's MCPA claim, with Ms. Garey claiming that Rule 9(b) does not apply to her individual MCPA claim because it does not sound in fraud. Opposition at 12 (citing *Gillis v. Household Fin. Corp. III*, No. GJH-18-3923, 2019 WL 3412621, at *8 (D. Md. July 29, 2019) ("Statutory consumer protection claims, like claims under the MCDCA and portions of the MCPA based on non-fraudulent but unfair or deceptive conduct, are not required to be pled with particularity.")). Assuming without deciding that Ms. Garey's MCPA claim, which is based on the same conduct[15] as her MMFPA claim, *is* subject to Rule 9(b)'s heightened pleading standard, I conclude that Ms. Garey has satisfied that requirement with respect to both Count Eight and Count Nine.

A plaintiff stating a claim for fraud under Maryland law must "allege five elements with particularity: (1) the defendant made a false statement of fact; (2) the defendant knew the statement was false or acted with reckless disregard for the truth of the statement; (3) the defendant made the statement for the purpose of defrauding the plaintiff; (4) the plaintiff reasonably relied on the false statement, and (5) the plaintiff was damaged as a result." *Marchese v. JPMorgan Chase Bank, N.A.*, 917 F. Supp. 2d 452, 465 (D. Md. 2013).

Ms. Garey alleges that SunTrust "misrepresented that it would process Ms. Garey's shortsale in good faith," SAC ¶ 31, but then "refused to accept reasonable shortsale offers and demanded a purchase contract in excess of the value of the Property." *Id.* ¶ 32. Ms. Garey alleges that she relied on SunTrust's misrepresentation and "found a buyer that agreed to sell the Property

---

[15]     Ms. Garey's also claims that SunTrust committed mortgage fraud by representing that it had a right to conduct a foreclosure sale when it had not conducted a face-to-face meeting as required by HUD regulation, *id.* ¶ 14–18; 22. For the reasons explained in Section III.A., *above*, Ms. Garey cannot invoke the HUD regulation "as a sword" in this "offensive cause of action against the mortgagee." *Neal*, 922 A.2d at 546.

back to her," *id.* ¶ 103, and that it caused her to incur "actual damages, including pecuniary damages, emotional and mental distress and costs and attorney fees." *Id.* ¶ 106. Ms. Garey makes only conclusory allegations regarding SunTrust's intent to defraud, but "conclusory allegations of defendant's knowledge as to the true facts and of defendant's intent to deceive" are permissible under Rule 9(b). *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999); Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").

Although the allegations of Counts Eight and Nine are, frankly, disjointed and somewhat sparse, when read in the context of the complaint as a whole, and in the light most favorable to Ms. Garey, I am satisfied that Ms. Garey "did indeed allege the who, what, when, where and how of the alleged fraud" in a manner sufficient to survive a motion to dismiss. *Smith v. Clark/Smoot/Russell*, 796 F.3d 424, 432 (4th Cir. 2015).[16]

Accordingly, SunTrust's Motion to Dismiss is denied as to Counts Eight and Nine.

*C.   Individual RESPA claim against SunTrust (Count Ten)*

RESPA requires a mortgage loan servicer to respond within five days to certain communications from borrowers that seek "information related to the servicing" of their mortgage loan. Such communications are known as qualified written requests ("QWR"). Ms. Garey alleges next that SunTrust failed to respond to two letters she sent it in August of 2019 in violation of RESPA.

---

[16]     In Count Nine Ms. Garey also claims that SunTrust committed mortgage fraud by sending notices "to hundreds of borrowers prior to the foreclosure sale," *id.* ¶ 35 that falsely represented that "ownership of the property may be transferred to SunTrust Bank within the next 60 to 90 days as a result of the foreclosure sale." *Id.* ¶ 34. But the SAC alleges that BWW, not SunTrust, sent such a notice to Ms. Garey. SAC ¶ Accordingly, this theory cannot support Ms. Garey's claims against SunTrust.

A plausible claim for relief under RESPA must allege the plaintiff made "(1) a written request that meets RESPA's definition of a QWR, (2) the servicer failed to perform its duties, and (3) actual damages." *Barr v. Flagstar Bank, FSB*, 303 F. Supp. 3d 400, 417 (D. Md. 2018) (quoting *Thomas v. Ocwen Loan Servicing, LLC*, No. CV ELH-17-218, 2017 WL 2645721, at *6 (D. Md. June 19, 2017)).

RESPA defines a QWR as:

a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—

(i)     includes, or otherwise enables the servicer to identify, the name and account of the borrower; and

(ii)    includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B).

Additionally, the Consumer Financial Protection Bureau ("CPFB") has issued regulations "to give full effect to RESPA," which outline additional rules regarding which customer communications require a loan servicer to respond, as well as providing the necessary substance and timing when a response is required. *See* 12 C.F.R. §§ 1024.35; 1024.36.

Regulation X obligates mortgage lenders to provide responses to properly formulated "Requests for Information," 12 C.F.R. § 1024.36, and "Notices of Error," 12 C.F.R. § 1024.35. Regarding a Request for Information ("RFI"), the regulations provide:

A servicer shall comply with the requirements of this section for any written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan. A request on a payment coupon or other payment form supplied by the servicer need not be treated by the servicer as a request for information. A request for a payoff balance need not be treated by the servicer as a request for information. A qualified written request that requests information relating to the servicing of the mortgage loan is a request for information for

purposes of this section, and a servicer must comply with all requirements applicable to a request for information with respect to such qualified written request.

12 C.F.R. § 1024.36.

And regarding a Notice of Error ("NOE"), the regulations explain:

A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred. A notice on a payment coupon or other payment form supplied by the servicer need not be treated by the servicer as a notice of error. A qualified written request that asserts an error relating to the servicing of a mortgage loan is a notice of error for purposes of this section, and a servicer must comply with all requirements applicable to a notice of error with respect to such qualified written request.

12 C.F.R. § 1024.35.

There appears to be some confusion among federal courts applying RESPA as to whether a NOEs and RFIs are subsets of QWRs, or whether they are three different categories of communication, each requiring a different kind of response.[17] The CFPB's Official Interpretation supports the latter view and explains that there is overlap between the three: "A qualified written request is just one form that a written notice of error or information request may take. Thus, the error resolution and information request requirements in §§ 1024.35 and 1024.36 apply as set forth in those sections irrespective of whether the servicer receives a qualified written request." 12 C.F.R. § 1024, Supp. I (official CFPB interpretations) (as cited by *Cole v.*

---

[17]     *Compare Jackson v. Caliber Home Loans*, No. 18-CV-4282 (NG) (CLP), 2019 WL 3426240, at *1 (E.D.N.Y. July 30, 2019) ("Qualified written requests *can be classified as* requests for information or notices of error. A qualified written request that requests information relating to the servicing of a mortgage loan is a request for information, 12 C.F.R. § 1024.36(a), and a qualified written request that "asserts an error relating to the servicing of a mortgage loan is a notice of error[.]") (emphasis added), *with Messina v. Green Tree Servicing, LLC*, 210 F. Supp. 3d 992, 1007 (N.D. Ill. 2016) ("The new regulations provide "for two types of written requests *in addition to* the qualified written requests (QWRs) that existed under the previous regulations: (1) notices of error 12 C.F.R. § 1024.35 and (2) requests for information, 12 C.F.R. § 1024.36.") (emphasis added).

*JPMorgan Chase Bank, N.A.*, No. 2:15-CV-2634, 2016 WL 4491731, at *7 (S.D. Ohio Aug. 25, 2016); *Messina v. Green Tree Servicing, LLC*, 210 F. Supp. 3d 992, 1007 (N.D. Ill. 2016)

In light of the CFPB's interpretation, I first assess whether Ms. Garey's August 2019 letters to SunTrust qualify as a QWR, an RFI, or a NOE.[18]

A valid QWR must "relate to servicing" and not simply question the validity of a loan or request copies of loan documents for inspection. *Id.* RESPA defines "servicing" as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts ... and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3).

The SAC states in a conclusory manner that Ms. Garey's letters "pertained to the loan or the servicing of the loan," but provides no facts that support that assertion. SAC ¶ 118. Indeed, her description of the purported QWRs undermines her position and reveals that the purpose of her correspondence was to ask SunTrust to cancel the upcoming foreclosure sale based on various alleged procedural omissions by SunTrust, not to request loan servicing information or to allege an accounting error. *Id.* ¶¶ 45–49.

A RFI is broadly defined to include "any written request for information from a borrower that . . . states the information the borrower is requesting with respect to the borrower's mortgage

---

[18]     SunTrust's Reply argues that Ms. Garey attempts in her Opposition to impermissibly re-cast her pleading to assert that her letters should be construed as a NOE or RFI, rather than a QWR. ECF 87, SunTrust Reply at 7. Ms. Garey's SAC alleges that her letters "pertained to the loan or the servicing of the loan, and notified SunTrust of an error and/or requested SunTrust provide certain information concerning the loan." SAC ¶ 118. It also cites both the RESPA section that addresses QWRs, and the regulation that addresses NOEs. *Id.* ¶¶ 119–20. Although Ms. Garey's conclusory allegations and citations do not alone meet the pleading standard, her reference in her Opposition to all three categories of communications should hardly come as a surprise to the Defendants.

loan." 12 C.F.R. § 1024.36(a). Notably, though, requests for a payoff balance "need not be treated by the servicer as a request for information." *Id.* Ms. Garey alleges that her letters requested a payoff amount, but she does not allege that she requested any other information. ¶¶ 45–49. Because requests for payoff amounts are specifically excluded from the definition, Ms. Garey's correspondence do not constitute RFIs.

A NOE is also broadly defined as "any written notice from the borrower that asserts an error and that includes . . . the error the borrower believes has occurred." 12 C.F.R. § 1024.35. Not all purported errors are covered by § 1024.35, which specifically enumerates the categories of "covered errors," which includes "conducting a foreclosure sale in violation of § 1024.41(g) or (j)." *Id.*

 Ms. Garey has not specified what kind of "covered error" was identified in her letters to SunTrust, but it can be reasonably inferred from the allegations of the SAC that her letter asked SunTrust to cancel the foreclosure sale because, she claimed, foreclosure was not permitted at that time due to SunTrust's purported failure to "send her a copy of the Final Loss Mitigation Affidavit and a Request for Postfile Mediation" and to comply with HUD's face-to-face meeting requirement. SAC ¶ 45. Construing those allegations in the light most favorable to Ms. Garey, SunTrust may arguably have been proceeding with the foreclosure sale in violation of § 1024.41(g). At this early stage in the proceedings, that is enough. Therefore, I conclude that Ms. Garey's August 10, 2019 correspondence may constitute a NOE under RESPA.

Because Ms. Garey has sufficiently alleged that she sent SunTrust a NOE, that SunTrust failed to respond as required by statute, and that she suffered actual damages as a result, her RESPA claims survives and SunTrust's Motion to Dismiss Count Ten is denied.

    *D.  Individual TILA claim against SunTrust (Count Eleven)*

"Congress passed TILA to assure a meaningful disclosure of credit terms by mandating that creditors make specific disclosures before extending credit to consumers." *Best v. Newrez LLC*, No. GJH-19-2331, 2020 WL 5513433, at \*30 (D. Md. Sept. 11, 2020) (internal quotation and citation omitted). Section 1638(f) of TILA sets forth requirements regarding ongoing periodic communications from a creditor to an obligor in the context of a residential mortgage loan. 15 U.S.C. § 1638(f). The statute also authorizes additional requirements to be enacted by regulation. 15 U.S.C. § 1638(f)(1)(H). The regulations, in turn, require creditors to inform obligors when "the servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process," and of "the total payment amount needed to bring the account current." 12 C.F.R. § 1026.41(d)(8)(v)–(vi).

Ms. Garey accuses SunTrust of violating § 1638(f) in three different ways: (1) "by failing to provide accurate cure amount[s] in the periodic mortgage statements to the Plaintiff," (2) "by failing to provide notice that a foreclosure action had been filed in the periodic mortgage statements to the Plaintiff," and (3) "by failing to provide periodic mortgage statement on a regular (i.e.[,] monthly) basis." SAC ¶¶ 126–28.

In response, SunTrust argues that Ms. Garey "has failed to adequately allege[] actual damages[.]" SunTrust MTD at 17. SunTrust correctly observes that:

> The SAC is bereft of a single factual allegation identifying the actual damages Plaintiff allegedly suffered or how those damages proximately flowed from the alleged violation of 15 U.S.C. § 1638(f). Instead, Plaintiff merely cites the damages provision in the statute, 15 U.S.C. § 1640, and alleges in conclusory fashion that SunTrust is liable for "[a]ctual damages including emotional damages and pecuniary costs." (ECF No. 56, ¶ 130).

*Id.*

SunTrust relies primarily on this Court's decision in *Best*, 2020 WL 5513433, at \*30, in which Judge Hazel addressed near-identical circumstances and concluded that the plaintiff's

failure to assert actual damages was fatal to his TILA claim. In *Best*, "[t]he damages allegations . . . merely quote from the damages provision of the statute, 15 U.S.C. § 1640, and state that Defendants are liable for 'emotional damages and pecuniary costs' without elaboration. These assertions are facially insufficient." 2020 WL 5513433, at *32. Ms. Garey's has failure to plead actual damages in her SAC is likewise fatal to her claim that SunTrust violated § 1638(f).

However, Ms. Garey also claims that SunTrust violated TILA under § 1639(g) "by failing to provide a payoff statement." SAC ¶ 129. 15 U.S.C. § 1639(g) requires a mortgagor to "send an accurate payoff balance within a reasonable time, but in no case more than 7 business days, after the receipt of a written request for such balance from or on behalf of the borrower." Unlike a claim for a violation of § 1638(f), for which recovery is limited to actual damages, a borrower bringing a claim for a violation of § 1639(g) may seek actual damages, statutory damages, and costs and attorneys' fees. 15 U.S.C. § 1640.

SunTrust claims that Ms. Garey's § 1639(g) claim must nevertheless fail because the SAC does not identify *when* Ms. Garey requested a payoff amount. SunTrust MTD at 18. It is true that Count Eleven itself does not include this information, and that its internal citations supporting its claim appear to be incorrect. *See* SAC ¶¶ 125–130 (citing ¶¶ 35 and 40). However, Paragraph 45 of the SAC alleges that Ms. Garey sent SunTrust a letter on August 10, 2019 asking SunTrust to cancel the foreclosure sale. Immediately thereafter, in Paragraph 46, Ms. Garey alleges that she "also requested SunTrust send her a cure amount . . . . And she requested a payoff amount." Although this portion of the SAC is far from a model of clarity, it is reasonable to infer from the allegations of Paragraphs 45 and 46 that Ms. Garey requested a payoff amount on August 10, 2019. And because Ms. Garey has also sufficiently alleged that SunTrust failed to respond to that letter

as required under TILA, I find that Ms. Garey has stated a plausible claim for relief under TILA at 15 U.S.C. § 1639(g).

Accordingly, SunTrust's Motion to Dismiss Count Eleven of the SAC is granted with respect to the alleged violations of 15 U.S.C. § 1638(f) and denied with respect to 15 U.S.C. § 1639(g). Ms. Garey's claims that SunTrust violated § 1638(f) are dismissed without prejudice.

### E.  Individual FCRA claim against SunTrust (Count Twelve)

Finally, Ms. Garey alleges in Count Twelve of the SAC that SunTrust violated the FCRA by reporting to credit reporting agencies that it foreclosed on her mortgage. SAC ¶¶ 131–136, 162–166.[19] The FCRA imposes various duties on "furnishers of information," like SunTrust, when they receive notice of dispute. 15 U.S.C. § 1681s-2(b). FCRA requires that, "after receiving notice . . . of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall--

(A) conduct an investigation with respect to the disputed information;

(B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;

(C) report the results of the investigation to the consumer reporting agency;

(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—

(i) modify that item of information;

---

[19]  Ms. Garey has withdrawn her claim that SunTrust also violated the FCRA by accessing her credit information without a permissible purpose and under false pretenses. Opposition at 21; SAC ¶¶ 133, 167.

(ii) delete that item of information; or

(iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2.[20]

Ms. Garey alleges that she sent letters to the credit reporting bureaus in November 2019 and that they forwarded a notice of her dispute to SunTrust. SAC ¶ 134. Ms. Garey also alleges that SunTrust failed to take appropriate investigative action in response to the reported dispute, or, alternatively, that SunTrust *did* investigate but "did not report to the credit reporting agencies that the foreclosure was improper." *Id.* SunTrust counters that Ms. Garey's claims fail because the information SunTrust provided to the credit bureaus was accurate, which defeats this kind of FCRA claim. SunTrust MTD at 18–20. I agree with SunTrust.

To plausibly allege an FCRA claim, "a plaintiff must establish three elements: (1) that he or she notified the consumer reporting agency of the disputed information, (2) that the consumer reporting agency notified the defendant furnisher of the dispute, and (3) that the furnisher then failed to investigate and modify the inaccurate information." *Magruder v. Educ. Sys. Fed. Credit Union*, 194 F. Supp. 3d 386, 389-90 (D. Md. 2016) (quoting *Ausar–El v. Barclay Bank Delaware*, No. PJM 12–0082, 2012 WL 3137151, at *3 (D. Md. July 31, 2012)). "The FCRA is designed to prevent the 'compilation and dissemination of *inaccurate* credit information,' so a plaintiff cannot prevail on a claim against a credit furnisher under 15 U.S.C. § 1681s-2(b) without 'a showing of actual inaccuracy.'" *Alston v. Wells Fargo Home Mortgage*, Civil Action No. TDC-13-3147, 2016 WL 816733, at *10 (D. Md. Feb. 26, 2016) (citing *Chiang v. Verizon New England, Inc.*, 595 F.3d 26, 37-38 (1st Cir. 2010)) (emphasis added).

---

[20]    Ms. Garey alleges that SunTrust violated each of the subsections (A)–(E), above. SAC ¶¶ 162–166.

Ms. Garey relies on *Mohamed v. Select Portfolio Servicing, Inc.*, 215 F. Supp. 3d 85, 94 (D.D.C. 2016), for the proposition that "accuracy of the reporting does not excuse a furnisher's duty under the FCRA to reasonably <u>investigate</u> the dispute." *Id.* (collecting cases) (emphasis in original). I do not find this non-binding authority persuasive, particularly in light of contrary decisions in this Court that are grounded on the sound reasoning of multiple federal circuits, including the Fourth. *See, e.g., Alston v. Equifax Info. Servs., LLC*, No. CV TDC-15-3343, 2016 WL 5349716, at *2 (D. Md. Sept. 22, 2016) (collecting cases from the First, Fourth, Ninth, and Eleventh Circuits.). *See also Magruder v. Educ. Sys. Fed. Credit Union*, 194 F. Supp. 3d 386, 390 (D. Md. 2016).

The Circuit Court for Charles County ratified the sale of the Property on October 31, 2019, before Ms. Garey allegedly submitted letters of dispute to the credit reporting bureaus. Foreclosure Action Docket; SAC ¶ 134. By the time SunTrust allegedly received notice of the dispute, any investigation by SunTrust would only have revealed that its prior report that it had foreclosed on Ms. Garey's mortgage, SAC ¶ 131, was accurate, as required under the FCRA. *See* 15 U.S.C. § 1681s-2(a). The fact that Ms. Garey continues to dispute the legality of the foreclosure is of no object—SunTrust is "neither qualified nor obligated to resolve a question that can only be resolved by a court of law," and which, in this instance, already *had* been resolved by a court of law. *Chiang v. Verizon New England Inc.*, 595 F.3d 26, 38 (1st Cir. 2010). *Id.*[21] Accordingly, Ms. Garey's FCRA claim must fail.

---

[21]     The fact that the Circuit Court ratified the foreclosure sale in this case distinguishes it from the authority that Ms. Garey cites in support of her argument. *See, e.g., Mushala v. United States Bank, Nat'l Ass'n*, No. CV 18-1680 (JDB), 2019 WL 1429523, at *11 (D.D.C. Mar. 29, 2019) ("For instance, Mushala claims that SLS prematurely reported the Property as foreclosed while foreclosure proceedings were ongoing.").

For those reasons, Count Twelve of the SAC is dismissed as against SunTrust. And because amendment would be futile, it is dismissed with prejudice.

**IV.** **Defendants' Motions to Strike Class Allegations**

SunTrust, joined by BWW, also moves to strike the class allegation of the SAC. SunTrust MTD at 24–28; BWW MTD at 20. Because I have dismissed each of the putative Class Claims in the SAC with prejudice, the Defendants' Motions to Strike Class Allegations are denied as moot.

## CONCLUSION

For the foregoing reasons, BWW's Motion to Dismiss is granted, SunTrust's Motion to Dismiss is granted in part and denied in part, and the Defendants' Motions to Strike the Class Allegations in the SAC are denied as moot.

## ORDER

For the reasons stated in the foregoing Memorandum Opinion, it is by the United States District Court for the District of Maryland hereby ORDERED that:

1.  Defendant BWW Law Group's Motion to Dismiss Plaintiff's Second Amended Complaint, ECF 82, is GRANTED. Plaintiff's claims against BWW are DISMISSED WITH PREJUDICE;

2.  Defendant SunTrust's Motion to Dismiss Plaintiff's Second Amended Complaint, ECF 79, is GRANTED in part and DENIED in part:

    a.  SunTrust's Motion to Dismiss is GRANTED as to Counts Two, Three, Four, and Seven, which are DISMISSED WITH PREJUDICE;

    b.  SunTrust's Motion to Dismiss is GRANTED as to Count Twelve, which is DISMISSED WITH PREJUDICE as to SunTrust;

    c.   SunTrust's Motion to Dismiss is GRANTED as to Count Eleven with respect to the allegations regarding SunTrust's alleged violations of 15 U.S.C. § 1638(f), which are DISMISSED WITHOUT PREJUDICE;

    d.   SunTrust's Motion to Dismiss is DENIED as to Count Eleven with respect to the allegations regarding SunTrust's alleged violation of 15 U.S.C. § 1639(g);

    e.   SunTrust's Motion to Dismiss is DENIED as to Counts Eight, Nine, and Ten;

3.    The Defendants' Motions to Strike Class Allegations are DENIED as moot.

DATED: September 30, 2021

                                                    /S/
                                         Paul W. Grimm
                                       United States District Judge